STATE OF NEBRASKA ET AL., APPELLANTS, v. WILBER E. COOLEY ET AL., APPELLEES.

56 N. W. 2d 129

Filed December 19, 1952. No. 33273.

*Clarence S. Beck*, Attorney General, *Robert A. Nelson*, *Lloyd E. Christiansen*, and *Hines & Hines*, for appellants.

*Bruce K. Lyon* and *Henry W. Curtis*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an action originally instituted in the county court of Dundy County by the State of Nebraska, Claude O. Frasier, and Alma C. Frasier against Wilber E. Cooley and J. Louise Cooley for the unlawful detention of a section of school land. Trial was had to a jury and it found the defendants "not guilty of unlawful detention." Judgment was entered on the verdict for the defendants.

Plaintiffs thereupon filed a petition in error in the district court for Dundy County, which, after a hearing, that court dismissed. Plaintiffs thereupon filed a motion for new trial and have perfected this appeal from the overruling thereof.

The action involves all of Section 16, Township 4, Range 38 West of the 6th P. M., in Dundy County, Nebraska. It is a part of the lands granted to the State of Nebraska under section 7 of the Enabling Act of Congress and is dedicated to be used for the support of the common schools of the state. It is under the control and management of the Board of Educational Lands and Funds which will hereinafter be referred to as the board.

William L. Cooley obtained a 25-year lease to these lands dated December 31, 1924, and expiring December 31, 1949. On September 18, 1942, the administrator of William L. Cooley's estate assigned this lease to the appellees. This lease provided: "* * * that at the expiration of twenty-five years from and after the first day of January next ensuing after the date of this lease, or sooner, with the consent of the Board of Educational Lands and Funds, he will peaceably and quietly leave, surrender, and yield up all and snigular (singular) the said lands and premises." By reason of these provisions

appellees' rights to possession of these lands under this 25-year lease ceased as of January 1, 1950.

Within the time provided by section 72-240, R. R. S. 1943, the appellees, as of August 2, 1949, each made application to the board asking it for a new lease pursuant to the authority granted it by section 72-240.01, R. R. S. 1943.

In this respect section 72-234, R. R. S. 1943, provides in part: "Leases shall be for periods of twelve years less the period intervening between the date of the execution of the lease and December 31 of the previous year."

In response to the applications of appellees, the land having been appraised to fix the rentals of the new lease, the board, as of November 14, 1949, issued to appellees a 12-year lease effective January 1, 1950. Appellees remained in possession of the lands under this lease and paid rentals for 1950 and 1951 in accordance with the terms therein provided.

Sometime between August 24 and September 4, 1951, the board, by letter, notified appellees that because of the holdings of this court it had adopted a motion cancelling and setting aside the lease they held and advised them that a lease on the lands covered by their lease would be offered at public auction after notice thereof had been given as provided by law. This notice was published in the Benkelman Post in accordance with the provisions of section 72-233, R. R. S. 1943, which provides in part: "The Board of Educational Lands and Funds may, at least once in each year, designate a day and hour for offering, in a public manner at the office of the county treasurer in the respective counties, lease contracts on all the educational lands in each respective county which may be subject to lease at the time of such offering. Said offering shall be announced in a public manner by publishing a notice thereof three weeks preceding said auction in one or more of the legal newspapers published or of general circulation in

the county in which said unleased land is located."
This notice advised the public that a lease on these
lands would be offered at public auction on September
27, 1951, at 9:30 a. m., at the office of the county treas-
urer of Dundy County in Benkelman, Nebraska.

At this sale appellants Claude O. Frasier and Alma C.
Frasier made the highest bid. They bid the sum of
$4,100 as a bonus in addition to the rentals fixed by the
lease and made application to the board accordingly.
In pursuance to their application the board issued them
a 12-year lease dated October 8, 1951, but effective on
January 1, 1952. They have paid the $4,100 plus the
rental charges for the first six months of 1952.

In accordance with section 72-240.06, R. R. S. 1943,
the improvements of appellees on these lands were ap-
praised by the county commissioners of Dundy County.
They fixed the value thereof at $1,425. This amount
the Frasiers have deposited with the county treasurer.
However, the appellees refused to accept the amount
deposited and have appealed to the district court where
the matter is now pending.

Appellees refused to surrender possession to the new
lessees, the Frasiers. Consequently, on April 11, 1952,
appellants caused a three-day notice to vacate to be
served on appellees. This action was commenced on
April 23, 1952.

Most of the contentions made here by appellees were
raised and determined in Propst v. Board of Educational
Lands and Funds, *ante* p. 226, 55 N. W. 2d 653. In
fact the appellees' contentions in this case are mostly
supported by referring to parts of appellants' brief in
the former case. We will not repeat all of these con-
tentions but only cite the holdings in the Propst case
which are controlling thereof. In Propst v. Board of
Educational Lands and Funds, *supra,* we held:

"Application was made in each instance for issuance
of the lease, the requirements of the act were complied
with, and a 12-year lease, not a 25-year renewal lease,

was issued to each of the previous lessees. These were applied for, issued, accepted, and retained knowingly under the act of 1947, by all who were in any way interested in and concerned with them. The judicial declaration that the automatic renewal plan of 1947 was invalid effectively disposed of any and all alleged rights of appellants granted by, applied for, and accepted by them under that act. The law of this state has always been that an unconstitutional statute is a nullity, is void from its enactment, and is incapable of creating any rights or obligations. Finders v. Bodle, 58 Neb. 57, 78 N. W. 480; Whetstone v. Slonaker, 110 Neb. 343, 193 N. W. 749; Lennox v. Housing Authority of City of Omaha, 137 Neb. 582, 290 N. W. 451.

"* * * There was a sufficient distinction between the situation of persons holding leases on state school lands under the statute in force prior to 1947 where opportunity had been afforded for the presentation of bids by third parties, and those who applied for and accepted renewal leases under the act of 1947 where the making of any bids by third parties was barred, to allow the state to treat them as different classes.

"* * * It was the decision of the court in the Ebke case that gave the renewal leases their status of legal nullity, and not the action of the board in entering the fact upon its records by its declaration or by its vacation of the previous orders concerning the issuance of the leases. There was nothing the board could do or that appellants could have interposed if they had been present at the meeting of the board when this was done that would have affected the invalidity of the leases. The board did not violate rights by its action because no rights in this regard existed. Due process can only be involved when there are existing rights to be defended."

The principal questions remaining are the character of appellees' rights by virtue of their remaining in possession of the premises after the 25-year lease expired and what was required before they could be dispossessed.

In this regard the district court found, and appellees here contend, that they have a tenancy from year to year and that consequently a six-months' notice was necessary to bring about a termination thereof. See Critchfield v. Remaley, 21 Neb. 178, 31 N. W. 687.

"It is generally held that if, after the expiration of a lease, the tenant pays rent and the landlord accepts the payment, the lease is extended. The extended term is usually said to be from year to year, although it is probable that in most cases it is meant that such a term results when the lease is for a year or for years. It has been generally ruled, however, that there is only a presumption of a tenancy from year to year arising from a holding over and that such presumption, or implication of the law as it is sometimes called, is rebuttable. It is rebuttable by showing that such a tenancy was not the intention of the parties or that they had entered into a contrary agreement." 32 Am. Jur., Landlord and Tenant, § 940, p. 792.

In West v. Lungren, 74 Neb. 105, 103 N. W. 1057, we quoted the following from Montgomery v. Willis, 45 Neb. 434, 63 N. W. 794: " 'Such a tenancy will be presumed where a tenant remains in possession after the expiration of his term, and his tenancy is recognized by the landlord, where no new contract was made. Critchfield v. Remaley, 21 Neb. 178. This rule is, however, only a rule of presumption, and the presumption is rebutted by proof of a different agreement, or of facts inconsistent with the presumption. Shipman v. Mitchell, 64 Tex. 174; Williamson v. Paxton, 18 Gratt. (Va.) 475; Grant v. White, 42 Mo. 285; Secor v. Pestana, 37 Ill. 525.' "

Appellees' right to possession of the premises under the 25-year lease terminated on January 1, 1950, by the terms thereof. It is self-evident that no attempt was made to hold over under the terms of the 25-year lease as appellees, prior to January 1, 1950, applied for and obtained a 12-year lease commencing with that date. The possession of appellees, commencing with January 1,

1950, was under the 12-year lease and the rents paid by them for the years of 1950 and 1951 were under the terms thereof. As has already been said that lease was void and incapable of creating any rights.

There is another reason why appellees did not obtain a tenancy from year to year. We have often held: "The school lands were received and are held in trust by the State of Nebraska for educational purposes. The state as trustee of the lands and of the income therefrom is required to administer the trust estate under the rules of law applicable to trustees acting in a fiduciary capacity. The title of the lands is not vested in the state with all the ordinary incidents of other titles but the title thereto was granted to and vested in the state upon an express trust for the 'support of common schools' with no right or power of the state to use, dispose of, or alienate the lands or any part thereof, except as allowed by the Enabling Act and the Constitution. Anyone dealing with the school lands must do so with knowledge of and subject to the trust obligation of the state. Enabling Act of Congress, Vol. 2, p. 5, R. R. S. 1943; Art. VII, § 9, Constitution of Nebraska; State ex rel. Ebke v. Board of Educational Lands & Funds, *supra;* State v. Platte Valley Public Power & Irr. Dist., *supra;* State ex rel. Walker v. Board of Commissioners, 141 Neb. 172, 3 N. W. 2d 196; Warren v. County of Stanton, 145 Neb. 220, 15 N. W. 2d 757; State ex rel. Stephan v. Taylor, 44 Idaho 353, 256 P. 953; Murphy v. State, 65 Ariz. 338, 181 P. 2d 336; Annotation, 23 A. L. R. 2d 1419." Propst v. Board of Educational Lands and Funds, *supra.*

Article VII, section 1, Constitution of Nebraska, provides: "The Governor, Secretary of State, Treasurer, Attorney General, and Superintendent of Public Instruction shall, under the direction of the Legislature, constitute a board of commissioners, *for the* sale, *leasing, and general management of all lands* and funds *set apart for educational purposes,* and for the investment of

school funds, *in such manner as may be prescribed by law."* (Italics supplied.)

"By the provisions of section 1, article VII, of the Constitution, the Board of Commissioners there named, under the direction of the Legislature, has the power to lease said lands. They will be herein referred to as the board. Legislative direction, as to the terms under which the school lands shall be leased, is subject to and limited by the obligation to preserve the trust property inviolate. Likewise, the action of the board in leasing the school lands is subject to and limited by the terms imposed by the Legislature. Their power to lease exists only insofar as it is directed or permitted by the Legislature. State v. Central Nebraska Public Power and Irrigation District, 143 Neb. 153, 8 N. W. 2d 841. Anyone dealing with the school lands must be held to do so with knowledge of and subject to the trust obligations of the state and the legislative grant of power to the board as to the terms and conditions of the lease. The law enters into and becomes a part of the contract. Stanser v. Cather, 85 Neb. 305, 313, 123 N. W. 316, 124 N. W. 102." State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196. See, also, State ex rel. Ebke v. Board of Educational Lands and Funds, 154 Neb. 244, 47 N. W. 2d 520.

"* * * the Legislature has the power to provide the method of administering the public school lands of the state as a trust is not subject to question. But the method provided must be one which is within the law governing the administration of trust estates. The designation of these lands as a trust in the Constitution has the effect of incorporating into the constitutional provision the rules of law regulating the administration of trusts and the conduct and duties of trustees." State ex rel. Ebke v. Board of Educational Lands and Funds, *supra.*

"Upon the termination of a lease, however, the interests of the beneficiaries of the trust can be protected to

some extent, at least, by placing the lease up at public auction as provided by section 72-233, R. R. S. 1943, or by some other method to be provided by statute consonant with the rules of law applicable to trustees acting in a fiduciary capacity." State ex rel. Ebke v. Board of Educational Lands and Funds, *supra*.

"The Board of Educational Lands and Funds in leasing school land is limited by the authority granted it by the Legislature. It has no other power." Todd v. Board of Educational Lands and Funds, 154 Neb. 606, 48 N. W. 2d 706.

As above stated, the Legislature has the power to provide the method for administering the public school lands of the state. However, anyone dealing with the leasing of school lands does so subject to the trust obligations of the state and the legislative grant of power to the board as to terms and conditions of the lease, for the board, in leasing school land, is limited by the authority granted it by the Legislature. It has no other power.

We find no statutory authority, and none has been cited, authorizing the board to create year to year tenancies in school lands. In the absence thereof no such tenancies can be created.

Under this situation the appellees held only a tenancy at sufferance, (see 51 C. J. S., Landlord and Tenant, § 175, p. 779, and § 177, p. 782,) and were not entitled to a notice to terminate, (see 51 C. J. S., Landlord and Tenant, § 183, p. 785,) except the three-day notice to vacate required by section 27-1404, R. R. S. 1943, which was given prior to the commencement of this action.

Appraisal of appellees' improvements was made as required by section 72-240.06, R. R. S. 1943, and, within the time therein provided, appellees appealed therefrom to the district court where the action is now pending. The fact that they have appealed from such appraisal in no way affects the appellants' right to maintain this action.

Under the facts disclosed by the record we find ap-

pellees, as a matter of law, were unlawfully holding possession of the premises and that judgment should have been entered for appellants. We therefore reverse the judgment of the lower court and remand the cause with directions to enter judgment for the appellants in accordance with the prayer of their petition.

REVERSED AND REMANDED WITH DIRECTIONS.