BETTY JANE WATKINS, APPELLANT, v. MYRON E. DODSON, APPELLEE.

68 N. W. 2d 508

Filed February 11, 1955.   No. 33614.

*McGinley, Lane, Powers & McGinley,* for appellant.

*Bruce K. Lyon* and *Henry W. Curtis,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Betty Jane Watkins, brought this action in the district court for Perkins County against the defendant, Myron E. Dodson, seeking to recover damages for alleged conversion of a wheat crop grown and harvested by the defendant upon described school land of which the defendant was a former lessee and the plaintiff a new lessee.

The plaintiff's petition alleged that she was the owner of a leasehold estate from the State of Nebraska, Department of Educational Lands and Funds, hereinafter referred to as the Board of Educational Lands and Funds, under school land lease No. 72602 covering Lots 1, 2, 3, and 4, Section 36, Township 9 North, Range 42 West of the 6th P. M., in Perkins County, and entitled to the immediate possession of the wheat crop grown on said leased land during the summer of 1952; and that on or

about June 25, 1952, the defendant wrongfully and tortiously, and with force prevented the plaintiff from harvesting the wheat crop but converted the same to his own use, resulting in damage to the plaintiff in the amount of $6,600.

The defendant, by amended answer, denied generally the allegations contained in the plaintiff's petition; alleged that sections 72-240, R. S. 1943, and 72-240.06, R. R. S. 1943, providing for appraisal of improvements and crops were unconstitutional; that the Perkins County board of county commissioners, in appraising said property, acted unconstitutionally in that it gave no notice to defendant of any hearing at which the appraisal was to be made, and gave the defendant no opportunity to introduce evidence as to the value of his crop; and that the defendant was not present at such appraisal and had no notice of the time and place of any appraisal of such crop.

The plaintiff's reply to the amended answer of the defendant denied all allegations therein contained except as had been admitted by the pleadings; alleged that the defendant was estopped from alleging the unconstitutionality of sections 72-240, R. S. 1943, and 72-240.06, R. R. S. 1943, for the reason that the defendant ratified the constitutionality of the statute by claiming a right to said crop under a lease issued to him by the Board of Educational Lands and Funds under the above sections of the statutes; and that the matter sought to be raised in the amended answer was res judicata by reason of the defendant having taken an appeal from the appraisement of the county commissioners of Perkins County which appraisement had been made pursuant to the provisions of the above-cited statutes.

A jury was waived and trial had to the court. The trial court found generally for the defendant and against the plaintiff; that the evidence failed to show any right of title in the plaintiff to the wheat crop; that the defendant came into possession of the land involved in

good faith under a purported lease issued by the Board of Educational Lands and Funds dated December 12, 1949; that said lease was a nullity, and by reason thereof the defendant at all times involved therein was a tenant at sufferance; that he was in actual and constructive possession of the school land involved, was the owner of the wheat planted on said land, and was entitled to harvest it; that the county commissioners of Perkins County made a purported appraisement of the wheat crop involved; that the Board of Educational Lands and Funds had no interest in the said crop, was without authority to compel the appraisement of the crop, and the purported appraisement was void; that the appeal taken by the defendant from the appraisement of the board of county commissioners did not constitute res judicata for the reason that the board of commissioners never obtained jurisdiction to appraise the property; and that the district court for Perkins County had no jurisdiction to hear the appeal. The trial court dismissed the plaintiff's petition. The plaintiff filed a motion for new trial which was overruled, and the plaintiff perfected appeal to this court.

We will refer to the parties as they were designated in the district court.

The defendant was in possession of the land involved in the instant case under and by virtue of a school land lease issued to him in 1925 which would terminate in 25 years, or on January 1, 1950. He made application for a new lease under section 72-240, R. R. S. 1943. Upon his application being received, the Board of Educational Lands and Funds issued to him a new 12-year lease under and pursuant to the authority of the provisions of section 72-240.01, R. R. S. 1943. The case of State ex rel. Ebke v. Board of Educational Lands & Funds, 154 Neb. 244, 47 N. W. 2d 520, affirmed by subsequent cases, determined that all leases executed pursuant to and under the authority of those statutes were a nullity. Therefore, in conformity with the resolution

of the Board of Educational Lands and Funds dated August 13, 1951, defendant was subsequently notified that his 12-year lease was canceled and void and would be subsequently offered for sale at public auction in accordance with the published notice provided for by law; that he would be given an opportunity to bid at the sale; that in the event some person other than the defendant should be the successful bidder, any improvements on the land would be appraised by a majority of the members of the board of county commissioners and the new lessee would be required to pay the amount of such appraisement; and that either the defendant or the new lessee could, if dissatisfied with the appraisement, take an appeal to the district court.

The plaintiff secured the lease by tendering the highest bid at public auction which was held on April 16, 1952. The only improvement existing on the land involved was a field of growing wheat. There was a report of the appraisement by the county commissioners of Perkins County made on the 26th day of May 1952, and delivered to the county treasurer of the said county which fixed the value of the improvement at $2,400. A check in the amount of $2,400, signed by the plaintiff by her husband E. L. Watkins, was executed and delivered on May 27, 1952, to the county treasurer in payment of the appraisement as fixed by the county commissioners. A receipt was executed by the county treasurer to the plaintiff covering this amount on May 28, 1952. The plaintiff, in addition, paid $321 rental as required by law, and $1,851 for bonus and lease fee on lease No. 72602.

The defendant paid the Board of Educational Lands and Funds the rent for the premises for the years 1950 and 1951.

On June 11, 1952, the defendant signed a duly verified petition on appeal in which he alleged that prior to April 16, 1952, he was the lessee of the land in question and planted 113 acres of summer-fallow wheat; that

said wheat remained on the real estate when it was sold by the state; and that he was entitled to compensation for the growing wheat as provided for by law.

On June 25, 1952, the defendant was served by the sheriff of Perkins County, or his deputy sheriff, with a notice signed by the plaintiff that she was the owner of the lease on the premises involved.

On or about June 26, 1952, the defendant was served by the sheriff of Perkins County, or his deputy sheriff, with a notice to quit the premises, signed by an assistant attorney general of the state.

During the year 1950, the defendant farmed the land, and during the summer of 1951, he summer fallowed it. During the latter part of August or the early part of September, the defendant planted wheat on the summer-fallowed land, this being the wheat in controversy in this action. The defendant completed the harvest of the wheat a little more than 3 days after being served with the notice to quit. There were 2,652.67 bushels of wheat harvested on the premises. The market value at the time the wheat was delivered to the elevator was $2.07 a bushel.

The appeal of the defendant from the county commissioners' appraisement was dismissed on the plaintiff's motion March 30, 1953.

On June 25, 1952, the husband of the plaintiff, acting as her agent, entered upon the land with a combine for the purpose of cutting and harvesting the wheat, and the defendant physically and forcibly restrained the plaintiff's husband from harvesting said wheat. The defendant had, 3 or 4 days prior to that time, started the harvesting of the wheat.

There is other evidence in the record which is not material to a determination of this appeal.

The principal assignments of error set forth by the plaintiff are as follows: (1) That the trial court erred in finding that the appraisement of the growing wheat on May 26, 1952, by the county commissioners of Per-

kins County was void; (2) that the trial court erred in finding that the defendant was the owner of and entitled to harvest the wheat involved on June 25, 1952; (3) that the trial court erred in finding that the defendant was in actual and constructive possession of the school land involved at all times pertinent to this case; and (4) that the trial court erred in finding that the appeal by the defendant from the appraisement of the wheat crop involved was not res judicata as to the issue of who was entitled to possession and ownership of the wheat.

The defendant in the instant case, under the facts presented, held only as a tenant at sufferance and was not entitled to notice to terminate except the 3-day notice to vacate required by section 27-1404, R. R. S. 1943, which was given as shown by the facts previously set out. See State v. Cooley, 156 Neb. 330, 56 N. W. 2d 129.

The defendant in the instant case had no lease of any kind, nor did he have a contract with the state or with the plaintiff. See, State v. Gardner, 156 Neb. 326, 56 N. W. 2d 135; State v. Cooley, *supra.*

The plaintiff contends that section 72-240.06, R. R. S. 1943, was the law exclusively governing the appraisement and disposition of the improvements, including crops on the school land on which the defendant planted a crop of wheat while he was holding as a tenant at sufferance in the fall of 1951.

In this connection, the plaintiff asserts that by virtue of the 25-year lease held by the defendant which had terminated, the defendant was holding the same subject to the terms and conditions of his 25-year lease insofar as the same was consistent with his tenancy; and that this would include the provisions of all of the Nebraska statutes relating to school leases. The plaintiff cites sections 72-217 and 72-218, Comp. St. 1929, being the statutes applicable to the defendant's old 25-year lease. We will not set forth the subject matter contained in these statutes. Section 72-218, Comp. St. 1929, above

cited contained substantially the same provisions as appear in section 72-240.06, R. R. S. 1943, which provides in part: "If the lease is made to a person other than the lessee, the value of all the improvements on the land shall be appraised by a majority of the members of the board of county commissioners * * *. Improvements to be included in such appraisement shall be * * * plowing for future crops and for alfalfa or other crops growing thereon. The appraisement herein provided for shall be made within thirty days after the entry of the new lease and after being signed shall be filed within five days with the county treasurer of the county in which the land is situated. The new lessee shall pay all costs of the appraisement. Either the lessee or the new lessee may, if he is dissatisfied with the appraisement, within thirty days after the filing thereof, appeal therefrom to the district court of the county in which the land is situated. The new lessee, if he be other than the former lessee, shall within thirty days after the filing of the appraisement pay to the county treasurer the amount of the appraisement."

We are not in accord with the plaintiff's contention as above set forth, but rather with the contention of the defendant that even in the event the appraisal statute was applicable to the case at bar, the same was unconstitutional for the following reasons: It does not provide for any hearing to be held by the appraisers; it does not provide for any notice to the owner of the property; and there is no requirement that the owner be given any notice or opportunity to be present when the appraisal is made.

The record does not disclose that the defendant was notified of hearing to be had before the board of county commissioners, nor was he afforded an opportunity to be present at the time the appraisal was made. Under the circumstances, we believe the following to be applicable.

In Webber v. City of Scottsbluff, 155 Neb. 48, 50 N.

W. 2d 533, the court said that the owner of property to be condemned is entitled to notice of the proceedings and an opportunity to protect his rights. Notice must be given the property owner so that he may appear before the appraisers and protect his rights.

The indispensable elements of due process are a tribunal with jurisdiction, notice of hearing to the proper party, and an opportunity for a fair hearing according to applicable procedures. See Ripley v. Godden, 158 Neb. 246, 63 N. W. 2d 151.

In Albin v. Consolidated School Dist., 106 Neb. 719, 184 N. W. 141, an eminent domain case, chapter 244, Laws 1919, was held to be unconstitutional for failure to provide for notice to the property owner of time and place at which the appraisers would meet for the purpose of making the appraisement. Actual knowledge of the owner of the appointment of the appraisers under an unconstitutional act cannot operate as a substitute for notice required by due process of law. The law must require notice and give a right and an opportunity to be heard. See, also, Chicago, R. I. & P. Ry. Co. v. State Railway Commission, 88 Neb. 239, 129 N. W. 439; People v. Tallman, 36 Barb. (N. Y.) 222; Wilber v. Reed, 84 Neb. 767, 122 N. W. 53.

As stated in 16 C. J. S., Constitutional Law, § 612, pp. 1225, 1229: "While the requirements of due process apply in respect of special or summary proceedings, the mere fact that the proceeding is special or summary in character does not of itself militate against the presence of due process of law. * * * It is, however, essential that due process attend all special and summary proceedings of a judicial character, * * * and where a special or summary remedy fails to afford the essential elements of due process of law it is invalid, * * *."

It is said that the deprivation of property without due process of law is inhibited by both the federal Constitution and the Constitution of the state. While the term "due process of law" may not be susceptible of a pre-

cise definition which will include all cases, yet it has ever been held to require an opportunity to be heard. Notice of some kind is essential, and because there is no provision in the statute in question for a notice or an opportunity to be heard it is violative of the constitutional provisions for the protection of property rights. Due process of law in the most comprehensive sense implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, to be heard by testimony or otherwise, and to have the right of controverting by proof every material fact which bears on the question of right in the matter involved. This is a right of which the property owner cannot be deprived by the courts, the city council, or the Legislature. See, McGavock v. City of Omaha, 40 Neb. 64, 58 N. W. 543; Wilber v. Reed, *supra*.

We believe, under the facts appearing herein and the authorities above cited, that section 72-240.06, R. R. S. 1943, is unconstitutional and void.

An unconstitutional statute is a nullity, is void from its enactment, and is incapable of creating any rights or obligations. See State v. Cooley, *supra*.

The plaintiff contends that the defendant accepted the benefits conferred by section 72-240.06, R. R. S. 1943, and is now estopped to deny its validity or application to his case, and that by appealing from the county commissioners' appraisement, the defendant became estopped to set up the ownership of the wheat in himself in the instant case.

The plaintiff asserts that the defendant, after receiving notice from the Board of Educational Lands and Funds that the alleged new lease that he held was void, by his silence acquiesced in the terms as contained in the notice, which terms were incorporated in section 72-240.06, R. R. S. 1943; and that he stayed on the land as a tenant by sufferance beyond the period and at the

termination of his 25-year lease which was the period covered by the rent he had paid.

The plaintiff cites the following: Lackaff v. Department of Roads & Irrigation, 153 Neb. 217, 43 N. W. 2d 576, to the effect that a party invoking the provisions of a statute is not in a position to raise the question of its constitutionality.

State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. 2d 784, 152 A. L. R. 480, is also cited to the effect that estoppel is most frequently applied in cases involving constitutional law when persons in some manner partake of advantages under statutes.

There is authority to the effect that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality to avoid resulting burdens. See 11 Am. Jur., Constitutional Law, § 123, p. 767.

No estoppel can arise where all the parties interested have equal knowledge of the facts, or where the party claiming estoppel has the some means of ascertaining or is chargeable with notice of the facts, or is equally negligent or at fault. See Scottsbluff Nat. Bank v. Blue J Feeds, Inc., 156 Neb. 65, 54 N. W. 2d 392.

Where the defendant did not ask that an appraisement be made, took no part in it, and only obtained knowledge of an appraisement when the county commissioners made and filed their report as provided for in section 72-240.06, R. R. S. 1943, and did not invoke said section or seek any benefits thereunder, he is not estopped from raising the question of the constitutionality of such statute.

As to whether or not the plaintiff's contention that the defendant, by undertaking to appeal from the appraisement of the county commissioners to the district court is estopped to set up the ownership of the wheat in himself, the only estoppel pleaded in the plaintiff's reply was to the effect that the defendant was estopped from raising the question of the constitutionality of the

appraisal statute, section 72-240.06, R. R. S. 1943, and that the matter sought to be raised in the defendant's amended answer was res judicata by reason of defendant having taken an appeal from the appraisement of the county commissioners, which appraisement had been pursuant to the provisions of section 72-240.06, R. R. S. 1943.

This court, in From v. Sutton, 156 Neb. 411, 56 N. W. 2d 441, making reference to section 72-240.06, R. R. S. 1943, said: "It seems self-evident that the Legislature intended, by the statute it enacted, to extend to any parties coming within the scope thereof the right to an appeal which would entitle them to a retrial of the whole cause but failed to provide any procedural method for lodging jurisdiction thereof in the district court. This failure of the statute to so provide defeats the right for, as already stated, the right to appeal together with the mode and manner thereof are purely statutory."

Any attempt to appeal by the defendant under section 72-240.06, R. R. S. 1943, would be a futile effort on his part. We conclude that the plaintiff's contention as above set forth cannot be sustained.

With reference to the plaintiff's husband acting as her agent and entering upon the land with a combine for the purpose of cutting and harvesting the wheat and being restrained by the defendant from doing so, it appears from the stipulation that 3 or 4 days prior to that time the defendant had started harvesting the wheat, and on June 26, 1952, the defendant was served by the sheriff, or his deputy, with a notice to quit the premises, signed by an assistant attorney general of the state acting for and on behalf of the Board of Educational Lands and Funds. We deem the following to be applicable to this situation.

In Miller v. Maust, 128 Neb. 453, 259 N. W. 181, it was held: "One purpose of the act empowering a justice of the peace to determine the issue in an action of forcible entry and detainer is to prevent even rightful

owners of realty from taking the law into their own hands and recovering by violence what the remedial powers of a court would grant." The court further stated: " 'One great object of the forcible entry act,' says Gantt, J., in Myers v. Koenig, 5 Neb. 419, 422, 'is to prevent even rightful owners from taking the law into their own hands and attempting to recover by violence, what the remedial powers of a court would give them in peaceful mode.'. Tarpenning v. King, 60 Neb. 213. * * * It was the purpose of the statute relating to forcible entry and detainer to prevent parties to a litigable controversy like the present from taking the law into their own hands. The issue was not ownership or title, but 'lawful and peaceable entry.' "

In addition thereto, our statutes, sections 27-1401 to 27-1417, R. R. S. 1943, govern the matter of forcible entry and detainer. Section 27-1404, R. R. S. 1943, provides for the notice to quit and that it shall be served at least 3 days before commencing the action. This notice is a condition precedent to bringing the action of forcible entry and detainer, and is not sufficient in and of itself to permit entry by the person claiming the right of possession to the land. Other steps in conformity with the above-cited statute must be taken to dispossess a person claimed to be unlawfully detaining the premises.

As stated in Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479, in speaking of the forcible entry and detainer statute of that state: "The statute (Gen. St. 1878, c. 84, § 11) has gone further than the common law, and has given the landlord the right, in any case where the tenant holds over 'after any rent becomes due, according to the terms of such lease or agreement,' to bring an action to recover possession of the premises. But while extending this remedy to the landlord, it nowhere provides that the commencement of such an action shall be equivalent to an entry, or work a forfeiture of the lease. On the contrary, the provisions of the statute

are wholly inconsistent with any such theory, and all point to the manifest legislative intent that, for the unlawful withholding of the possession during the pendency of the action, the lessor's sole remedy is the rental value of the premises." The opinion then sets out other steps in such a proceeding that are somewhat analogous to our statute with reference to forcible entry and detainer.

Under the facts as above set forth, the defendant had harvested the wheat crop in its entirety 4 days after the notice to quit was served upon him and, as previously stated, the notice to quit is merely a condition precedent to the bringing of an action in forcible entry and detainer. In other words, no action had been brought in forcible entry and detainer against the defendant when the wheat was harvested, and no judgment in such an action rendered against him. The defendant had the right to harvest the wheat and is not guilty of conversion as contended for by the plaintiff.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.