STATE OF NEBRASKA EX REL. DON STENBERG, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, RELATOR, V. DOUGLAS RACING CORP., A NEBRASKA NONPROFIT CORPORATION, RESPONDENT.
524 N.W.2d 61

Filed November 18, 1994.   No. S-94-293.

Don Stenberg, Attorney General, and L. Jay Bartel for relator.

Robert A. Skochdopole and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for respondent.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

PER CURIAM.

This is an original action on relation of the Attorney General seeking a declaration (1) that 1992 Neb. Laws, L.B. 718, now codified at Neb. Rev. Stat. §§ 2-1203, 2-1203.01, 2-1207, 2-1208, 2-1216, 2-1221, 2-1222, and 2-1230 through 2-1242 (Cum. Supp. 1994), violate Neb. Const. art. III, § 24, and (2) that a license issued to the respondent, Douglas Racing Corp., for a teleracing facility in Bennington, Nebraska, is void due to the unconstitutionality of the statute under which the license was issued. Also, relator seeks to permanently enjoin respondent from acting pursuant to the license issued for the Bennington teleracing facility. To simplify, the various sections of L.B. 718 discussed herein will be referred to by their current code section numbers.

The parties have stipulated to the facts. Neb. Const. art. III, § 24, forbids the Legislature to authorize games of chance, with certain exceptions. Section 24 provides in relevant part:

(4) Nothing in this section shall be construed to prohibit (a) the enactment of laws providing for the licensing and regulation of wagering on the results of horseraces, wherever run, either within or outside of the state, by the parimutuel method, *when such wagering is conducted by licensees within a licensed racetrack enclosure . . . .*

(Emphasis supplied). It is the italicized language over which the dispute rises.

On April 14, 1992, the Nebraska Legislature passed L.B. 718 with an emergency clause over the Governor's veto. It took effect April 15. L.B. 718 authorized telewagering at teleracing facilities. Section 2-1231 states in part:

(6) Teleracing facility shall mean a detached, licensed

area occupied solely by a licensee for the purpose of conducting telewagering and containing one or more betting terminals, which facility is either owned or under the exclusive control of the licensee during the period for which it is licensed; and

(7) Telewagering shall mean the placing of a wager through betting terminals electronically linked to a licensed racetrack, which electronic link instantaneously transmits the wagering information to the parimutuel pool for acceptance and issues tickets as evidence of such wager.

Basically, telewagering is the placing of a wager through terminals located at teleracing facilities. The teleracing facilities are located outside a licensed racetrack enclosure. The terminals are electronically linked to the racetrack's parimutuel betting pool. The wager is instantaneously transmitted to the parimutuel pool, and a ticket is issued to the bettor as evidence of a wager.

The State Racing Commission approves and issues licenses to racetracks to operate telewagering at teleracing facilities. § 2-1232. Sections 2-1237 and 2-1238 allow any racetrack to apply to the commission for approval of a teleracing facility. Respondent filed such an application with the commission on January 19, 1994; the application was approved. Respondent then opened a teleracing facility at Bennington, Nebraska, in March 1994 and continued to operate the facility as of the filing of the stipulation of facts. Relator applied to this court for leave to commence an original action, which we granted.

Betting on the outcome of horseraces in Nebraska is constitutionally authorized when conducted by the parimutuel method. Neb. Const. art. III, § 24. When betting by the parimutuel method, bettors attempt to predict the outcome of one or more races. In a particular race, all wagers predicting that a horse will win constitute a pool. From this pool, certain funds are deducted for taxes, for promotion of agriculture and breeder's awards, and for payment to the entity conducting the races. The remaining amount in the pool is paid out to the winning bettors proportionately. The amount which may be won is dependent upon a combination of the total amount bet

by all bettors and the total amount bet upon the same successful horse or combination of horses. There are also more complicated bets which involve prediction of the exact order of finish of the horses in a given race, or of the winners in two or more races. Money paid on each of these types of bets is assembled in a separate pool and divided among the successful bettors.

This parimutuel wagering system is managed at the racetrack with the aid of a computer known as a totalizator. The racetrack's totalizator receives information from various terminals concerning the amount and nature of bets placed upon each race or other pool. The totalizator continuously computes and recomputes the amount of each pool, the amount bet on each prediction for each horse, and the amount that would theoretically be paid out to successful bettors. This information is displayed as it is generated.

In Nebraska, prior to March 1994 when the teleracing facility at Bennington opened, a person who desired to place a bet on a horserace had to physically go to the racetrack; select the race, horse, and order of finish the bettor wished to predict; and then place a bet at a terminal station which was either operated by the bettor or a clerk at a parimutuel window. The money was taken at the terminal located within the licensed racetrack enclosure, and the bet was entered into the totalizator, which would record that transaction and place the money in the applicable parimutuel pool. The bettor then received a ticket as evidence of the wager. A successful bettor submitted the winning ticket to the racetrack for payment.

After March 1994, a person who desired to place a bet on a horserace could go either to the racetrack or to the teleracing facility in Bennington. The facility at Bennington contains terminals electronically linked to the racetrack's totalizator. Either the bettor or the parimutuel clerk operates the terminals and enters the bet. The bet is then sent to the totalizator at the racetrack, which enters the bet into the applicable parimutuel pool. The bettor receives a ticket as evidence of the wager.

The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Kwik Shop v. City of Lincoln*, 243 Neb. 178, 498 N.W.2d 102 (1993). See, also, *State*

*ex rel. Spire v. Strawberries, Inc.*, 239 Neb. 1, 473 N.W.2d 428 (1991). Statutes are afforded the presumption of constitutionality, and the unconstitutionality of a statute must be clearly established before it will be declared void. *Kwik Shop, supra.* See, also, *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). Nebraska's Constitution is not a grant, but, rather, is a restriction on legislative power, and the Legislature is free to act on any subject not inhibited by the Constitution. *Jaksha v. Thomas*, 243 Neb. 794, 502 N.W.2d 826 (1993). See, also, *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981). Therefore, the telewagering statutes are presumed constitutional unless relator can clearly establish that they are not. We find that relator met this burden and that the aforementioned statutes, to the extent they authorize telewagering, are unconstitutional for the reasons set forth herein.

Both relator and respondent agree, and § 2-1231(6) so states, that the Bennington teleracing facility is a detached, licensed area in which telewagering is conducted, detached meaning not physically within the licensed racetrack enclosure. Relator argues that telewagering at a teleracing facility is unconstitutional because, although the Legislature can provide for the licensing and regulation of parimutuel wagering on horseraces, such wagering must be conducted within the licensed racetrack enclosure. Relator argues that telewagering is essentially offtrack betting and that offtrack betting is not constitutionally authorized. Respondent argues that this court should focus on the conduct of the licensee, not where the actual wagering occurs, and since the licensee is conducting his end of the wagering within the licensed racetrack enclosure, telewagering is constitutional. Respondent agrees that offtrack betting is not constitutionally authorized, but contends that telewagering is not offtrack betting.

Constitutional provisions, like statutes, are not open to construction as a matter of course; construction of a constitutional provision is appropriate only when it has been demonstrated that the meaning of the provision is not clear and that construction is necessary. *State ex rel. Spire v. Conway*, 238 Neb. 766, 472 N.W.2d 403 (1991). See, also, *In re*

*Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990); *State ex rel. Spire v. Beermann*, 235 Neb. 384, 455 N.W.2d 749 (1990). We find article III, § 24, unambiguous, and thus, no construction is necessary. The Constitution plainly states that parimutuel wagering is authorized as long as it is "conducted by licensees within a licensed racetrack." This provision plainly requires that (1) the wagering must be conducted by an entity licensed to do so and (2) the wagering must be conducted by licensees at a racetrack enclosure which is licensed to operate horseraces. See, e.g., *State, ex rel. Hunter, v. The Araho*, 137 Neb. 389, 289 N.W.2d 545 (1940) (holding that the bars are not thrown down on parimutuel horseracing in Nebraska). It follows then that wagering that occurs in a detached facility, one that is by definition outside a licensed racetrack enclosure, cannot logically occur within a licensed racetrack enclosure as required by our Constitution.

Courts must apply and enforce the Constitution as it is written. *Conway, supra.* See, also, *State ex rel. Meyer v. Steen*, 183 Neb. 297, 160 N.W.2d 164 (1968). As written, article III, § 24, requires that parimutuel betting be conducted within a licensed racetrack, and we must enforce it as such. We agree with relator that telewagering at teleracing facilities is the functional equivalent of offtrack betting. Since offtrack betting is betting not conducted within a licensed racetrack enclosure, it is unconstitutional, and telewagering is thus also unconstitutional.

An unconstitutional statute is a nullity, is void from its enactment, and is incapable of creating any rights or obligations. *State v. Cooley*, 156 Neb. 330, 56 N.W.2d 129 (1952). See, also, *State v. Bardsley*, 185 Neb. 629, 177 N.W.2d 599 (1970), *overruled on other grounds, State v. Rosenberger*, 187 Neb. 726, 193 N.W.2d 769 (1972); *Board of Educational Lands & Funds v. Gillett*, 158 Neb. 558, 64 N.W.2d 105 (1954). Accordingly, having declared all of the aforementioned statutes unconstitutional to the extent they authorize telewagering at teleracing facilities, we also declare that the license issued to Douglas Racing Corp. by the State Racing Commission for the operation of the Bennington facility is void, since Douglas Racing Corp. acted pursuant to an unconstitutional statute

when it licensed the track. Respondent is hereby enjoined from acting pursuant to the license issued by the commission.

JUDGMENT FOR RELATOR.