REQUESTED BY: Governor Dave Heineman
LB 256, as originally introduced, proposed to clarify the provisions establishing the terms of the Commissioners of the Nebraska State Racing Commission ["Commission"] in light of changes to the Commission's membership resulting from the enactment of 2010 Neb. Laws LB 861, § 1 (codified at
Neb. Rev. Stat. § 2-1201 (Cum. Supp. 2010)). An amendment to LB 256 (AM1195) was adopted which changes the statutes pertaining to the issuance of licenses to operate racetracks and the qualification for racetracks to conduct intrastate and interstate simulcasting. LB 256 as passed will allow a racetrack licensee to contract with another licensee "to conduct all but one day of live race meetings on its behalf, and until January 1, 2027, [allow] a racetrack licensee located in a county which contains a city of the primary class [to] contract with another licensee. . .to conduct all live race meetings on its behalf." LB 256 § 2. In addition, the bill permits a racetrack licensee that "contracts for one or more live race meets. . ." to apply for an intrastate simulcast facility license (LB 256, § 3), as well as an interstate simulcast facility license (LB 256, § 4). Your question is whether LB 256, to the extent it would allow a racetrack licensee in a county with a primary class city to forego conducting any live racing by allowing the licensee to contract with other racetracks to conduct all live race meets, is consistent with Neb. Const. art. Ill, § 24, which permits the Legislature to authorize parimutuel wagering on horse races only "when such wagering is conducted by licensees within a licensed racetrack enclosure."
Printed win soy ink on recycled paper *Page 2 
Neb. Const. art. llI, § 24(4), authorizes the Legislature to enact
 laws providing for the licensing and regulation of wagering on the results of horseraces, wherever run, either within or outside of the state, by the parimutuel method, when such wagering is conducted by licensees within a licensed racetrack enclosure. . . .
In State ex rel. Stenberg v. Douglas Racing Corp.,246 Neb. 901, 524 N.W.2d 61 (1994) ["Douglas Racing Corp."], the Court considered whether statutes authorizing telewagering (placing wagers through betting terminals linked to a licensed racetrack) at teleracing facilities (detached facilities located outside a licensed racetrack enclosure) were permissible under art. Ill, § 24. Finding such wagering was inconsistent with the Legislature's authority to permit parimutuel wagering on the results of horseraces under the Constitution, the Court stated:
 The Constitution plainly states that pari-mutuel wagering is authorized as long as it is `conducted by licensees within a licensed racetrack.' This provision plainly requires that (1) the wagering must be conducted by an entity licensed to do so and (2) the wagering must be conducted by licensees at a racetrack enclosure which is licensed to operate horseraces. . . .It follows then that wagering that occurs in a detached facility, one that is by definition outside a licensed racetrack enclosure, cannot logically occur within a licensed racetrack enclosure as required by our Constitution. 246 Neb. at 906, 524 N.W.2d at 64 (citations omitted).
The Court confirmed that parimutuel wagering on horse races may only be permitted within the confines of a licensed racetrack enclosure in State ex rel. Stenberg v. Omaha Exposition andRacing, Inc., 263 Neb. 991, 644 N.W.2d 563 (2002) ["OmahaExposition and Racing"]. In Omaha Exposition and Racing, the Court held that legislation authorizing telephonic wagering which allowed wagers to be placed by telephone from outside the licensed racetrack enclosure, violated art. Ill, § 24, as "the constitutional language allows wagering only by those who are within a racetrack enclosure." Id. at 1002, 644 N.W.2d at 571. In reaching its decision, the Court noted that the voters in 1995 had rejected a proposed amendment to art. Ill, § 24, which "provided that parimutuel wagering on horseraces could be conducted by licensees `at such locations and by such means as are authorized by the Legislature.'" Id. at 1001, 644 N.W.2d at 571.
Douglas Racing Corp. and Omaha Exposition and Racing
confirm that the Constitution requires that parimutuel wagering on horse races must occur within a licensed racetrack enclosure. LB 256 proposes to allow a racetrack licensee located in a county containing a city of the primary class to contract with another licensee to conduct "all live race meetings on its behalf." LB 256, § 2. Under the amendment, a racetrack located in a county with a city of the primary class could be licensed to conduct wagering on intrastate and interstate simulcasting without conducting any live race meeting at its racetrack. While it is not possible to provide a definitive answer, we believe a court should conclude that such a result cannot be countenanced under *Page 3 
art. III, § 24, as it is questionable whether a racetrack location or facility that conducts no live racing can constitute a legitimate "licensed racetrack enclosure".
Indeed, it is not clear under the bill whether a licensee in a county with a city of the primary class would even be required to actually have a racetrack capable of holding live race meets, since it is allowed to contract to have all live race meetings held at another licensed racetrack. In fact, the bill and amendment 1195's introducer, Senator Karpisek, stated that part of the purpose of the amendment was to allow a Lancaster County facility 15 years to finance the building of a facility.
 Second, a racetrack facility in a county with a primary-class city, which currently would only be in Lancaster County, would be allowed to transfer all its live race day requirements for 15 years. The reason for this exception is because we are losing the racetrack at the former State Fairgrounds in Lincoln and it will take time and money to construct a new replacement facility. This amendment would give them an opportunity to have an enclosed racetrack facility as required by the Nebraska Constitution, but not have to run any live race days, so they can realize the most simulcast revenue possible in order to get the financing needed to build a top-notch racetrack facility before the 15-year sunset expires.
Floor Debate LB 256, AM 1195, 102nd
Leg. 1st Sess. (May 9, 2011) (Statement of Sen. Karpisek). If the Lancaster County facility has a "racetrack enclosure", it is not clear what purpose is served by the 15 year exemption from the requirement to conduct live racing. We found no other justification in the debate on amendment 1195 to support the 15 year exemption.
The Legislature's "power to define [terms] is limited, since (1) the Legislature cannot abrogate or contradict an express constitutional provision and (2) the legislative definition must be reasonable, and cannot be arbitrary or unfounded." MAPCO AmmoniaPipeline, Inc. v. State Bd. of Equal.,238 Neb. 565, 571, 471 N.W.2d 734, 739 (1991), cert. denied508 U.S. 960 (1993). A "racetrack" is "a plot of ground, usually oval, laid out for horse racing" (http://www.dictionary.reference.com/browse/racetrack (accessed May 20, 2011)) or "a usually oval course for racing." (http://www.merriam webster.com/dictionary/racetrack (accessed May 20, 2011)). Thus, a "racetrack enclosure" plainly means a course capable of being used for racing and the enclosed area surrounding the race course. To the extent the bill is intended to define a licensed racetrack enclosure to include an enclosed location without an actual racetrack in a county with a city of the primary class or to allow for simulcast for a period of years before such a facility is constructed, we believe it would be unconstitutional as contrary to art. Ill, § 24. *Page 4 
 Very truly yours, JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
 Approved: ___________________________ Attorney General *Page 1