Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/15/2019 09:07 AM CDT

TERRY P. BROWN AND LINDA S. BROWN, HUSBAND AND WIFE,
APPELLEES, V. JACOBSEN LAND AND CATTLE COMPANY,
A NEBRASKA CORPORATION, ET AL., APPELLEES, AND
STATE OF NEBRASKA EX REL. GAME AND PARKS
COMMISSION, INTERVENOR-APPELLANT.

___ N.W.2d ___

Filed March 15, 2019.    No. S-18-803.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.
3. **Adverse Possession: Proof: Time.** A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years.
4. **Adverse Possession: Words and Phrases.** A possession that is adverse is under a claim of ownership. Claim of ownership or claim of right means "hostile," and these terms describe the same element of adverse possession. The word "hostile," when applied to the possession of an occupant of real estate holding adversely, is not to be construed as showing ill will, or that the occupant is an enemy of the person holding the legal title, but means an occupant who holds and is in possession as owner and therefore against all other claimants of the land.
5. **Adverse Possession: Notice.** The purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his or her title or ownership is in danger so that he or she may, within the period of limitations, take action to protect his or her interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he or she takes possession.

6. **Adverse Possession: Title.** Possession of property by permission can never ripen into title by adverse possession unless there is a change in the nature of possession which is brought to the attention of the owner in some plain and unequivocal manner that the person in possession is claiming adversely thereby.

7. **Adverse Possession: Leases: Intent.** Entering real property as part of a lease agreement is entering it with permission and with acknowledgment of the owner's superior title and is not entering the land with hostile or adverse intent.

8. **Adverse Possession: Landlord and Tenant: Notice: Intent.** A tenant cannot assert ownership by adverse possession unless he or she first surrenders possession or, by some unequivocal act, notifies the landlord he or she no longer holds under the lease agreement.

9. **Adverse Possession.** A permissive use remains permissive where an original owner permitted the use and devised the land to another who simply continued to permit the use.

10. **Adverse Possession: Presumptions.** As between parties sustaining parental and filial relations, the possession of land of the one by the other is presumed to be permissive.

11. **Landlord and Tenant: Words and Phrases.** In the common law, a tenant or other lawful occupant who holds over without right is a tenant at sufferance.

12. **Landlord and Tenant: Contracts.** A tenancy at sufferance does not require privity of contract or estate between the holdover occupant and the property's record owner.

13. **Adverse Possession: Landlord and Tenant.** A tenancy at sufferance is a permissive interest; it is not an adverse possession and cannot be the basis for adverse possession.

Appeal from the District Court for Banner County: Derek C. Weimer, Judge. Reversed.

Douglas J. Peterson, Attorney General, and Charles E. Chamberlin for intervenor-appellant.

Andrew W. Snyder, of Chaloupka, Holyoke, Snyder, Chaloupka & Longoria, P.C., L.L.O., for appellees Terry P. Brown and Linda S. Brown.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg JJ.

Miller-Lerman, J.

## NATURE OF CASE

Terry P. Brown (Brown) and Linda S. Brown, husband and wife (collectively the Browns), filed an adverse possession action in the district court for Banner County against the adjacent record property owner, Jacobsen Land and Cattle Company (Jacobsen), to quiet title in disputed agricultural land to the north of the Browns' property. The Nebraska Game and Parks Commission (the State) intervened due to a purported purchase agreement with Jacobsen by which the State was to acquire the disputed land and other land. The State was permitted to present evidence. See *Brown v. Jacobsen Land & Cattle Co.*, 297 Neb. 541, 900 N.W.2d 765 (2017). The State opposed the Browns' claim and also asserted that it was entitled to relief under various equitable doctrines, because the State alleged that it had relied on Brown's purported misrepresentations regarding the Browns' interest in the disputed land. After trial, the district court quieted title to the disputed land in the Browns, and the State appealed. Because the Browns' interest in the disputed land began with permission and did not ripen into adverse possession, we reverse.

## STATEMENT OF FACTS

Jacobsen is the record owner of agricultural land in Banner County, Nebraska. Brown is a longtime farmer and rancher in Banner County and owns land adjacent to and south of Jacobsen's property. The disputed land claimed by the Browns consists of approximately 77 acres and is located in an area within Jacobsen's recorded land. For many years, the disputed land has been fenced in and, as a practical matter, enclosed with the Browns' land used for grazing cattle to the south. This fence essentially forms the perimeter of the disputed land. The disputed land has been adequately described as follows:

> Beginning at the west corner of the boundary line between the Jessup/Jacobson and Bud Jessup/Brown properties, the fence is on the true boundary line until it encounters

hardpan. . . . The fence then turns north following a ridge-
line that eventually turns east and then south back to the
true property boundary encompassing approximately 77
acres of the Jessup/Jacobson property.

Brief for appellant at 10.

The evidence indicates, and the district court found, that
Stanley Jessup, Sr., who owned the land to the south, built
the fence and used the land to the north, which was owned by
his brother, Frank Jessup, and under principles recited in our
analysis, Stanley's use was permissive. After transfers within
Frank's family, John Jessup and Alan Jessup sold the land,
including the disputed land, to Jacobsen in 2014.

The Browns' property was formerly owned by Stanley and,
later, by Stanley "Bud" Jessup, Jr. (Bud). Brown helped Bud
with his ranching operation on the land, including the disputed
land, prior to the 1980's. In the 1980's, Brown began to lease
property, including the disputed property, from Bud. Brown
testified that it was at this point, with permission from Bud,
that he began grazing cattle on the disputed property. The
oral lease continued until 1992, when Brown purchased the
Browns' property and other real property from Bud. The 1992
sale did not include the disputed land, but Brown continued to
use the disputed land as he had under the lease. Records admit-
ted at trial show that the Browns have neither been taxed nor
paid taxes on the disputed land.

The evidence showed that a barbed wire and post fence
existed in its current location for many years before the 1980's.
As noted, the disputed land is fenced in with the Browns' ranch
and Jacobsen and its predecessors in interest have raised cattle
on the other side of the fence. Brown walks or rides the fence
line at least annually and has hired a worker to assist him in
maintaining the fence. The fence follows the topography of the
land and is attached to trees along the ridge line, and trees have
grown into the fence in some places.

In approximately 2013, John and Alan decided to sell the
Jacobsen property, including the disputed land. They offered

Brown an opportunity to buy the entire Jacobsen property, but he declined. Brown made an offer to purchase a portion of the Jacobsen property that included the disputed land, but John and Alan refused the offer. John and Alan sold the property, including the disputed land, to Jacobsen in a warranty deed filed on May 6, 2014.

Jacobsen soon decided to resell the property, including the disputed land. Brown contacted Jacobsen and inquired about the sale. In 2014, the State began the process of purchasing the land. Prior to October 2, 2014, the State published notice and held a public hearing in Banner County regarding the proposed purchase of Jacobsen's property, including the disputed land. Brown attended several public hearings. Although Brown did not express an ownership interest in the disputed land, he wrote a letter to a commissioner for the State in which he generally opposed the sale. On October 3, Jacobsen and the State entered into a purchase agreement for the sale of a portion of Jacobsen's land that included the disputed land.

After Jacobsen and the State entered into their purchase agreement, but before they closed and recorded a deed, the Browns filed this action against Jacobsen to quiet title in the disputed land through adverse possession and recorded a lis pendens on the disputed land. The State intervened due to its purchase agreement with Jacobsen, the record owner of the disputed land. The State asserted various affirmative defenses. Jacobsen filed an answer which denied the claim of adverse possession and set forth several affirmative defenses, but declined to participate throughout most of the litigation, did not present evidence, and did not appeal.

The original trial took place in May 2016, and the district court found generally in favor of the Browns. The State appealed. We determined that the State, as intervenor, was denied its right to participate in the trial, including offering evidence and questioning witnesses. See *Brown v. Jacobsen Land & Cattle Co.*, 297 Neb. 541, 900 N.W.2d 765 (2017). We

reversed the decision of the district court and remanded the matter for a new trial. See *id*.

The district court held a second trial on April 12 and 13, 2018. Brown and the State offered evidence, and the district court took the matter under advisement. In an initial order, and in a subsequent amended order, the district court found generally in favor of the Browns and against the State.

In summary, the district court reviewed the elements of an adverse possession claim, found that the Browns' evidence satisfied each element, and found that the State's evidence was insufficient to overcome the Browns' proof or otherwise succeed. The district court granted the relief sought by the Browns and quieted title to the disputed land described particularly in an attached document which was incorporated in its order. The State appeals.

## ASSIGNMENTS OF ERROR

The State primarily claims, consolidated and restated, that the district court erred when it found that the Browns' evidence satisfied their burden of proof and established their entitlement to the disputed land by adverse possession. Because the State's foregoing argument is meritorious and dispositive, we do not reach the State's other assignments of error.

## STANDARD OF REVIEW

[1,2] A quiet title action sounds in equity. *Brown v. Jacobsen Land & Cattle Co., supra*. On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination. *Id*.

## ANALYSIS

[3] The Browns sought to quiet title to the disputed land under the theory of adverse possession. A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual,

(2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years. *Poullos v. Pine Crest Homes*, 293 Neb. 115, 876 N.W.2d 356 (2016). The statutory period in Nebraska is 10 years. Neb. Rev. Stat. § 25-202 (Reissue 2016). Although the district court found that the Browns' possession of the disputed land satisfied all of these elements, upon our de novo review, we believe there was a failure of proof regarding the last element, i.e., adverse possession under a claim of ownership. Because of the Browns' failure to prove that their possession of the disputed land was under a claim of ownership, we need not consider other elements of their adverse possession claim or the equitable defenses raised by the State.

[4,5] Certain principles of law apply to our analysis. We have described the element of adverse possession under a claim of ownership as follows:

A possession that is adverse is under a claim of ownership. . . . Claim of ownership or claim of right means "hostile," and these terms describe the same element of adverse possession. . . . The word "hostile," when applied to the possession of an occupant of real estate holding adversely, is not to be construed as showing ill will, or that the occupant is an enemy of the person holding the legal title, but means an occupant who holds and is in possession as owner and therefore against all other claimants of the land. . . . The purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his title or ownership is in danger so that he may, within the period of limitations, take action to protect his interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession.

*Wanha v. Long*, 255 Neb. 849, 859, 587 N.W.2d 531, 540 (1998).

[6-10] Possession by "permission" is also critical to our analysis, because possession of property by permission can never

ripen into title by adverse possession unless there is a change in the nature of possession which is brought to the attention of the owner in some plain and unequivocal manner that the person in possession is claiming adversely thereby. See *Wanha v. Long, supra*. See, also, *Young v. Lacy*, 221 Neb. 511, 378 N.W.2d 192 (1985); *Petsch v. Widger*, 214 Neb. 390, 335 N.W.2d 254 (1983). With respect to permissive use, it is well settled that entering real property as part of a lease agreement is entering it with permission and with acknowledgment of the owner's superior title and is not entering the land with hostile or adverse intent. See, *Svoboda v. Johnson*, 204 Neb. 57, 281 N.W.2d 892 (1979); *Purdum v. Sherman*, 163 Neb. 889, 81 N.W.2d 331 (1957). A tenant cannot assert ownership by adverse possession unless he or she first surrenders possession or, by some unequivocal act, notifies the landlord he or she no longer holds under the lease agreement. See *Jackson v. Eichenberger*, 189 Neb. 777, 205 N.W.2d 349 (1973). The use remains permissive where an original owner permitted the use and devised the land to another who simply continued to permit the use. *Petsch v. Widger, supra*. We have noted that "'[a]s between parties sustaining parental and filial relations, the possession of the land of the one by the other is presumed to be permissive . . . .'" *Chase v. Lavelle*, 105 Neb. 796, 807, 181 N.W. 936, 940 (1921).

[11-13] In the common law, a tenant or other lawful occupant who holds over without right is a tenant at sufferance. *Watkins v. Dodson*, 159 Neb. 745, 68 N.W.2d 508 (1955); *State v. Cooley*, 156 Neb. 330, 56 N.W.2d 129 (1952). It is not necessary that the original occupancy should have been as tenant of the record landowner, because a tenancy at sufferance does not require privity of contract or estate between the holdover occupant and the property's record owner. See, *Pillans & Smith Co., Inc. v. Lowe, et al.*, 117 Fla. 249, 157 So. 649 (1934); 52 C.J.S. *Landlord & Tenant* § 292 (2012). A tenancy at sufferance is a permissive interest; it is not an adverse possession and cannot be the basis for adverse possession. 52 C.J.S., *supra*.

In this case, the State contends that the Browns' possession of the disputed land was permissive and, thus, not hostile. It asserts that the district court erred when it determined that "[t]here is no evidence that the [Browns] were given . . . permission." We agree with the State that this finding is at odds with the record.

The district court acknowledged in its findings of fact that "[t]he area making up the 'disputed ground' was included in the lease agreement . . . ." And Brown testified that he received permission from Bud to graze his cattle on the disputed land as part of his lease agreement. Although Brown points out that he did not receive permission by a record owner, such fact would not be dipositive. A review of our adverse possession and other jurisprudence recited above shows that Brown's occupancy of the disputed land was not hostile where he began his lease—including use of the disputed land—with permission, even if such permission flowed from Bud and not a record owner. A change in ownership in the disputed land did not affect Brown's intent, which was at no point expressed as adverse under a claim of ownership. See *Petsch v. Widger, supra*.

Because the genesis of Brown's use and possession of the disputed land was a lease agreement and by lawful permission, when he began to hold over, he became a tenant at sufferance. And, as noted, a tenant at sufferance has a permissive interest. Brown admitted that neither his use of the disputed land nor his conduct toward the record owners, their successors in interest and individuals granted or granting permission, changed after he bought the Browns' property. Upon our de novo review, we determine that the Browns have not presented evidence of an act which manifested notice or warning to the real owner of the disputed land that his title or ownership was in danger. Brown came to the disputed land by permission, and because there was no change in the nature of his possession's being brought home to the true owner, his use did not ripen into title by adverse possession. *Young v. Lacy*, 221 Neb. 511, 378

N.W.2d 192 (1985). Because the Browns failed to prove the element of a claim of ownership, their claim of adverse possession must fail.

## CONCLUSION

Brown's use and possession of the disputed land began with permission under a lease, and the Browns failed to prove that the nature of their possession changed and that such change was brought to the attention of the real owners. The Browns failed to establish that their possession of the disputed land was under a claim of ownership, and therefore, their possession did not ripen into title by adverse possession. The district court erred when it concluded to the contrary. Accordingly, we reverse the judgment of the district court.

Reversed.