WILLIAM PROPST ET AL., APPELLANTS, V. BOARD OF EDUCATIONAL LANDS AND FUNDS OF THE STATE OF NEBRASKA ET AL., APPELLEES, GRACE GREEN, INTERVENER-APPELLANT.

55 N. W. 2d 653

Filed November 21, 1952. No. 33240.

*Bruce K. Lyon, Henry W. Curtis,* and *Mathews, Kelly, Fitzgerald & Delehant,* for appellants.

*Clarence S. Beck,* Attorney General, *Robert A. Nelson,* and *Charles Thone,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

William Propst, on behalf of himself and the holders of school land leases in the State of Nebraska similarly situated, and the intervener Grace Green, sought an injunction to prevent the Board of Educational Lands and Funds of the State of Nebraska, appellee, from treating as void certain renewal leases of state school lands previously issued by it to William Propst and Grace Green, appellants, and to others alleged to be in the same class; from attempting to offer for the term covered thereby new leases of such lands at public auction; from approving any bid received at the auction; and from executing a lease to any purchaser as the result of such sale proceedings. The district court found for appellees, refused to grant an injunction, and dismissed the action.

A school land lease made before the passage and approval of the act of 1947 relating to the leasing of school lands (Laws 1947, c. 235, p. 743) was for a term of 25 years. The lessee was given the right at the expiration of his contract to apply for and receive a new lease without a public offering of a lease of the land after published notice, if no third party desired to present a bid to the board for the expiring leasehold. If a third party did offer a bid for a less amount than the lessee was willing to pay, he was entitled to a renewal lease for a 25-year term, but if the third party offered a greater amount at the auction of the lease on the land than the lessee the third party got the lease. § 72-233, R. S. 1943. A right of the lessee to a renewal lease upon the expiration of his contract was conditioned that no person offered a higher bid for the leasehold than the lessee did. State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196.

The legislation of 1947, above referred to, granted an existing leaseholder upon the expiration of his contract an automatic right to a new lease for a 12-year term if he was then a qualified lessee, had performed the obligations and covenants of his prior lease, and

agreed to comply with the requirements of law and the regulations of the board. After the enactment of this statute the board declined bids from third parties if the existing leaseholder was qualified and made application for a renewal of his lease. There were bids attempted to be presented by third parties for leases on some of the tracts alleged to be here involved, and inquiries were made to the board as to the openness of other of such tracts. The number of such bids or inquiries is not shown, but the evidence may be said to establish that they were substantial. The advice of the board expressed to all those who inquired in this regard was that the existing leaseholders were by law entitled to a renewal of their leases if they desired and if they could qualify. Many of the tracts on which leases expired after the 1947 act was passed, including that involved in the renewal leases of appellants, were not the subject of express bids by third parties or of an inquiry as to their availability to lease by a non-lessee. There were about 2,300 leases upon separate tracts of school lands which expired after the act of 1947 by its terms became effective and, acting under the provisions thereof, the Board of Educational Lands and Funds renewed the leases to the lessees for 12-year terms. It is these approximately 2,300 persons who are the alleged class which William Propst claims to represent.

The automatic renewal of school land leases for 12-year terms was continued for more than three years before the decision of this court that parts of the act, giving previous leaseholders a special benefit in the school lands in the form of an automatic renewal right without regard to how much or whether others were willing to pay more, were void as being violative of the Constitution of the state. State ex rel. Ebke v. Board of Educational Lands & Funds, 154 Neb. 244, 47 N. W. 2d 520, on rehearing 154 Neb. 596, 47 N. W. 2d 526. Later decisions were to the same effect. Todd v. Board of Educational Lands & Funds, 154 Neb. 606, 48 N. W.

2d 706; Watson Hay Co. v. Board of Educational Lands & Funds, 154 Neb. 613, 48 N. W. 2d 711; Hanna v. Board of Educational Lands & Funds, 154 Neb. 619, 48 N. W. 2d 715.

These decisions, and especially the Ebke case, indicated to the appellee its duty, in the situation which the invalid statute had produced, of putting the land up for releasing at public auction. The appellee without notice to the lessees formally declared that all of the renewal leases issued by it under the 1947 act were void, vacated the proceedings under which the leases were made, and by letter advised the leaseholders that the land would be offered for releasing at public auction. These things were done by the board entirely as expressed in its record because of what this court had held in the cited school land cases. The appellee because of these decisions assumed that all the leases issued by it under the 1947 act were void from the time that they were issued and created no right in anyone. Many leases have been sold and issued after notice and public auction for lands affected by the renewal leases made under the automatic renewal law. This is true as to the land described in the renewal lease automatically secured by William Propst by virtue of that law. A new lease was sold on this land, after public notice, on January 17, 1952, after this case was commenced on December 21, 1951. He was a bidder at the sale, offered the highest and best bonus bid of $6,200 for a 12-year lease of the premises, submitted an application in writing to the appellee for the lease, and paid the amount of his bid and the semiannual rental on the lease. His bid and application were approved, a lease was issued by appellee, and was received, accepted, and retained by appellant. There was no attempt made by him to delay the sale proceedings by restraining order or temporary injunction until this case was tried and determined.

Appellants argue that the validity of the renewal leases issued by appellee after the legislation contain-

ing the automatic renewal provision should be sustained because it is shown that there was no bid for or inquiry concerning a lease on any of the school land covered by the renewal leases made to them respectively by a third party; that there is no proof of any bid or inquiry in reference to any specific lease on any of the lands described in the renewal leases issued to the members of the class represented herein; that the renewal leases complied with the provisions and requirements of the law governing the leasing of school lands in effect at the time of the passage of the act of 1947; and that it should be held to govern the leases of appellants and the others in the same class. The essence of this contention is that the Ebke case does not decide that all the renewal leases issued by virtue of the 1947 legislation were invalid, but only those where a bonus bid was actually offered by a third party to appellee. This is a misconception. The opinion in that case clearly and definitely states that it was a violation of the Constitution for the Legislature to attempt to extend to previous leaseholders a renewal right which prevented the board from receiving and accepting bids from third parties. This the act of 1947 affirmatively did. The record reasonably establishes that appellants, and the others who they properly represent, were sent notices of the expiration of their respective leases by appellee as the act provided; the time within which application must be made for a renewal lease in each instance; the fact that "Before a new twelve year lease is issued" the land would be reappraised and payment of at least six months' rental based upon the new appraised value of the land covered by the lease would be required to be paid; and the new lease would be sent to the county treasurer to be delivered to the lessee upon his compliance with the requirements stated in the notice. Application was made in each instance for issuance of the lease, the requirements of the act were complied with, and a 12-year lease, not a 25-year renewal lease, was issued to each of the

previous lessees. These were applied for, issued, accepted, and retained knowingly under the act of 1947, by all who were in any way interested in and concerned with them. The judicial declaration that the automatic renewal plan of 1947 was invalid effectively disposed of any and all alleged rights of appellants granted by, applied for, and accepted by them under that act. The law of this state has always been that an unconstitutional statute is a nullity, is void from its enactment, and is incapable of creating any rights or obligations. Finders v. Bodle, 58 Neb. 57, 78 N. W. 480; Whetstone v. Slonaker, 110 Neb. 343, 193 N. W. 749; Lennox v. Housing Authority of City of Omaha, 137 Neb. 582, 290 N. W. 451.

Appellants contend that they are denied equal protection of the law because they are subjected to the requirement of public auction of the leases on the lands which were the subject of the renewal leases issued under the 1947 act, whereas renewal leases on other school lands, which had been previously issued without public sale proceedings under the statute as it was before the 1947 legislation, are admittedly allowed to continue in force and effect. The situation resulting from the adjudication that the leases under the act of 1947 were invalid was such that it could not be determined what bids by third parties would otherwise have been made to appellee, and the single procedure to do justice to the schools and the interested parties was to require the lands to be put up for leasing at public auction. There was a sufficient distinction between the situation of persons holding leases on state school lands under the statute in force prior to 1947 where opportunity had been afforded for the presentation of bids by third parties, and those who applied for and accepted renewal leases under the act of 1947 where the making of any bids by third parties was barred, to allow the state to treat them as different classes.

It is asserted by appellants that the due process requirement of the Constitution of the state has been

violated by appellee declaring the renewal leases void, and in setting aside the proceedings approving and granting issuance of the renewal leases without notice to them and the opportunity for them to be heard. This postulate is without substance. It was the decision of the court in the Ebke case that gave the renewal leases their status of legal nullity, and not the action of the board in entering the fact upon its records by its declaration or by its vacation of the previous orders concerning the issuance of the leases. There was nothing the board could do or that appellants could have interposed if they had been present at the meeting of the board when this was done that would have affected the invalidity of the leases. The board did not violate rights by its action because no rights in this regard existed. Due process can only be involved when there are existing rights to be defended.

It is said by appellants that the title of the school lands granted to the state was not vested in it in trust but that the state was vested with the legal title thereto with all the ordinary incidents of other titles; that the obligation of the state is in the application of the proceeds of the grant and the state may exercise its discretion in the matter of disposing of them; and that the government of the United States alone may complain of any violation of the Enabling Act. They say that the trial court should have found that appellee was estopped to assert that the renewal leases were invalid. The school lands were received and are held in trust by the State of Nebraska for educational purposes. The state as trustee of the lands and of the income therefrom is required to administer the trust estate under the rules of law applicable to trustees acting in a fiduciary capacity. The title of the lands is not vested in the state with all the ordinary incidents of other titles but the title thereto was granted to and vested in the state upon an express trust for the "support of common schools" with no right or power of the state to use, dispose of, or alienate the

lands or any part thereof, except as allowed by the Enabling Act and the Constitution. Anyone dealing with the school lands must do so with knowledge of and subject to the trust obligation of the state. Enabling Act of Congress, Vol. 2, p. 5, R. R. S. 1943; Art. VII, § 9, Constitution of Nebraska; State ex rel. Ebke v. Board of Educational Lands & Funds, *supra;* State v. Platte Valley Public Power & Irr. Dist., *supra;* State ex rel. Walker v. Board of Commissioners, 141 Neb. 172, 3 N. W. 2d 196; Warren v. County of Stanton, 145 Neb. 220, 15 N. W. 2d 757; State ex rel. Stephan v. Taylor, 44 Idaho 353, 256 P. 953; Murphy v. State, 65 Ariz. 338, 181 P. 2d 336; Annotation, 23 A. L. R. 2d 1419.

This case was commenced on December 21, 1951. A lease on the school land described in the renewal lease automatically secured by William Propst by virtue of the 1947 act was advertised and sold to him as the highest and best bidder at public auction by appellee on January 17, 1952. He made a bonus bid of $6,200. He thereafter made application to appellee for a lease of the land, and paid his bid and the rental for six months. His bid was accepted, and a lease for a 12-year term from January 1, 1952, was issued to, accepted, and retained by him. He made no effort to have the court by order in this case delay or postpone the sale proceedings until the case could be heard and decided. On the contrary he, with full knowledge of all the facts, concurred and assisted in, and became the beneficiary of the sale of the lease on the land, the identical thing he was by this action asking the court to prevent. His conduct was inconsistent to a degree sufficient to defeat the granting by the court of the relief he asked. At the time of the trial of the case he was, as is shown by the evidence, the lessee of the land for a 12-year term commencing on January 1, 1952. The relief granted in an equity case is generally what the facts and law require at the time the decree is rendered. Stocker v. Wells, 150 Neb. 51, 33 N. W. 2d 445; Drake v. Morrow, 140 Neb. 258, 299 N.

W. 545. The remedy by injunction is generally preventive, prohibitory, or protective, and equity will not usually issue an injunction when the act complained of has been committed and the injury has been done. Conrad v. Kaup, 137 Neb. 900, 291 N. W. 687; Elson v. Schmidt, 136 Neb. 778, 287 N. W. 196.

The judgment of the district court should be and it is affirmed.

AFFIRMED.