STATE OF NEBRASKA, BOARD OF EDUCATIONAL LANDS AND FUNDS, APPELLANT, v. GENEICE ROSENBERGER, APPELLEE.

193 N. W. 2d 769

Filed January 28, 1972. No. 38002.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellant.

Daniel Stubbs of Stubbs & Metz, for appellee.

McGinley, Lane, Mueller, Shanahan & McQuillan, John A. Gale, and Maupin, Dent, Kay, Satterfield, Girard & Scritsmier, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

The Board of Educational Lands and Funds of the State of Nebraska brought this action under the provisions of section 72-240.11, R. S. Supp., 1969, for a declaratory judgment to determine the ownership of certain permanent "improvements" placed on a section of school land located in Box Butte County by the lessee of the land at his expense. The district court determined that the defendant lessee was the owner of the "improvements" and the Board of Educational Lands and Funds has appealed.

The defendant, Geneice Rosenberger, was the holder of leases covering a section of school land located in Box Butte County, Nebraska. She acquired the leases upon the death of her husband in 1959. The leases were initially for 25 years, commencing January 1, 1942, and had been extended for the years 1967 and 1968. The particular "improvements" set out in the petition and involved in the dispute were an irrigation pump and well, and land leveling.

The petition alleged that the irrigation pump and well was a replacement of a bad well drilled in 1951. The date of replacement was uncertain. The evidence shows permission of the Board of Educational Lands and Funds for an additional irrigation well in 1954. The decree of the district court refers to two irrigation wells. The evidence is confusing as to the identification of any particular well as to the date of installation and we shall,

therefore, assume that the irrigation pump and well in dispute here was placed on the land prior to 1953 and without direct written permission of the board.

All of the land leveling was done between 1948 and 1953 and was done without specific written permission of the board. The record does indicate that an agreement with the Soil Conservation Service as to the leveling was agreed to by the board. Costs of all wells and land leveling was paid solely by the lessee.

Same historical background is essential. Almost since the beginning of statehood there have been statutes regulating the leasing of the public school lands of the State. These lands comprise several million acres. Until recently, the State never assumed any of the costs of "improvements" on the school lands but, instead, our statutes encouraged the lessees in making "improvements" to these lands. The interests of the lessees in such "improvements" were protected by statutes which required a new lessee to pay the old lessee for his "improvements." In case of dispute as to value, the value was to be determined by a board of appraisers, subject to a right of appeal to the courts. All improvements put on leased public land are required to be assessed to the owner of such improvements as personal property. § 77-1209, R. R. S. 1943.

From time to time the Legislature defined "improvements." Those statutory definitions had little regard for the technical niceties of common law nor its definitions. Generally they made no distinctions between "improvements" which are severable from the land and those which became an actual part of the land itself and could never be severed. Neither did the Legislature make any distinctions between trees, crops, or plowing for future crops. Presumably, the Legislature intended to provide compensation to lessees for placing on the land something which would be separately valued upon termination of the lease, and that in itself added value to the land.

This court, in 1966, accurately stated: "The statutes on their face declare a compensation policy that has been uninterrupted for almost 50 years." Banks v. State, 181 Neb. 106, 147 N. W. 2d 132.

With this background, we turn to a consideration of the relevant cases dealing with the issues now before us. That record begins in 1955 with Watkins v. Dodson, 159 745, 68 N. W. 2d 508. The "improvements" statute involved included growing crops and the crop in controversy was wheat. The appraisement of "improvements" was conducted as required by statute and the new lessee paid the amount of the appraisal to the county treasurer. The old lessee filed an appeal from the appraisal but proceeded to harvest the wheat. This court held that the statute providing for appraisement of the value of the "improvements" and payment for them by the new lessee was unconstitutional because it failed to provide for notice and hearing to the owner of the property (the old lessee). The court clearly held that the interest of the old lessee in the "improvements" was a property right which entitled the former tenant to procedural due process before he could be deprived of the interest. It therefore held that the 1947 version of the improvement appraisal statute still in effect in 1952, was unconstitutional.

In Mara v. Norman, 162 Neb. 845, 77 N. W. 2d 569 (1956), the old lessee had made improvements which were appraised under the statute declared unconstitutional in Watkins, and the amount of the appraisal was paid to the county treasurer. Following the release of the Watkins opinion, the county treasurer refused to pay the amount of the appraisal to the old tenant but paid the amount into court. The amount paid for the crop, however, was returned to the new tenant, since the old tenant had harvested it. The district court found that the old tenant was entitled to the appraised sum for other improvements, but on appeal this court apparently determined that since the statute dealing with the ap-

praisal of improvements was unconstitutional, neither tenant could rely on it as the source of recovery. The court, however, again clearly recognized that the old tenant had an interest in the "improvements" and gave him permission to amend his pleadings to have determined whether or not "his improvements" had been taken and converted by the new lessees and if so, their value.

In 1966, following the passage of a statute providing for sale of the school lands, this court decided the case of Banks v. State, 181 Neb. 106, 147 N. W. 2d 132. In that case, we specifically held that a tenant on school lands has a property interest resulting from improvements made prior to September 14, 1953, notwithstanding the unconstitutionality of an appraisal and compensation statute that otherwise would be a source of his interest. That holding applied to "improvements" made before there was any requirement of approval by the state board, but the case also held that land leveling done without permission after September 14, 1953, was not compensable because of the statutory change which was effective on that date, requiring prior approval of improvements by the state board. The Banks case also specifically held that in the event of a sale of school lands to a third person under the provisions of the 1965 sale statute, a tenant has a right to compensation resulting from improvements compensable under the lease statutes, and that the value of the tenant's property interest resulting from improvements on school land is required to be determined prior to the sale of the land. That case is fully determinative of the issues here and without question requires affirmance of the judgment in this case.

In 1970, however, State v. Bardsley, 185 Neb. 629, 177 N. W. 2d 599, was decided. That case involved a quonset building erected by a tenant without permission after September 14, 1953. The court did not refer to Banks although it determined, as Banks had determined

before it, that "improvements" made without permission *after* September 14, 1953, became the property of the State and could not be removed. The position of the court in Bardsley was that because the appraisal portion of the 1947 "improvements" statute was unconstitutional, therefore all prior statutes containing the same provisions were also unconstitutional and all such statutes were complete nullities. Therefore, it was stated that only the common law applied and lessees obtained no interest in any "improvements" under any "improvement" statutes. The clear implication of Bardsley as to pre-1953 "improvements" was that the lessee had no interest in such improvements, either a property interest or a compensable interest, solely because Watkins had declared the 1947 appraisal portion of the statute unconstitutional for lack of notice and due process. Such a conclusion would either remove the sole basis for the finding of unconstitutionality in Watkins, or would itself result in an unconstitutional taking of property without just compensation. The court relied upon the common law rule that improvements which become a part of the real estate may not be removed and do not become the property of the lessee in the absence of an agreement, express or implied, or a statute indicating otherwise, citing Blomquist v. Board of Educational Lands & Funds, 170 Neb. 741, 104 N. W. 2d 264.

Even assuming that the statutes for more than 50 years were unconstitutional for lack of due process in taking the property of the lessee tenants without notice, they at least constituted an agreement, express or implied, or an indication and commitment by the State that the lessee of school lands had a compensable interest in "improvements" placed on the school lands by the lessee in reliance on the statutes.

To the extent that State v. Bardsley, 185 Neb. 629, 177 N. W. 2d 599, holds that a lessee of school lands has no interest except a common law interest in "improvements" placed on such lands without specific written

permission prior to September 14, 1953, it is overruled. The holding in Banks v. State, 181 Neb. 106, 147 N. W. 2d 132, is reaffirmed and readopted.

A tenant on school lands has a compensable interest in the nature of a property interest in "improvements" covered by statute and placed by him on such lands prior to September 14, 1953, in accordance with statute, notwithstanding the subsequent declaration of unconstitutionality of such a statute for lack of due process.

In the event of the sale of school lands to a third person, a tenant has a right to compensation resulting from "improvements" compensable under the lease statutes. Banks v. State, *supra.*

The value of a tenant's interest resulting from "improvements" on school lands is required to be determined prior to sale of the land. Banks v. State, *supra.*

It is quite clear that title to the school lands of this State is held in trust for the benefit of the common schools and that the State is required to administer them as trust property, subject to the rules of law applicable to the handling of trust estates. State ex rel. Ebke v. Board of Educational Lands & Funds, 154 Neb. 244, 47 N. W. 2d 520.

Beneficial interests of the educational trust in the school lands must of necessity be fully protected. Theories and standards of valuation of such intermingled interests have posed problems and obscured the basic issue. At the termination of the lease, or any later valuation date, the fair market value of the land should be determined as if none of the authorized "improvements" had been added. The fair market value of the land with the improvements on it should then be determined as of the same date. The difference is the value added to the land by the compensable improvements. The compensable interest of the tenant in "improvements" is limited to the value of the "improvements" so determined, or the actual cost of the "improvements" furnished and paid for by the tenant, whichever is less.

The judgment of the district court here determined that the defendant lessee was the owner of all of the "improvements" and declared her ownership. That judgment, within the limitations set out in this opinion, was correct and is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I respectfully dissent from the decision of the court in this case for the reason that I cannot be a party to the rape of the school land trust. I concede the legislative intent to grant rights to lessees in the improvements, but question the power of the Legislature to grant an interest of any nature in the land.

In this case, as in the Banks case, we are not concerned with rights as between lessees, but rather with the question whether a trustee may grant rights to the detriment of a cestui que trust. It is the law of trusts which should be controlling herein, and not the intent of the legislation.

It is undisputed that no request was made nor permission granted to place improvements on the land previous to 1954. Previous to that time there was no statute dealing with the rights and obligations as between a lessee of school land and the Board of Educational Lands and Funds with regard to permanent improvements placed upon the school lands by a lessee. In such situation, under the provisions of section 49-101, R. R. S. 1943, the common law applied. Under the common law, permanent improvements placed on real estate by a lessee without the consent of the landlord became the property of the landowner. It is also of interest to note that after the installation of the irrigation wells the lessee sublet the leased property to other lessees.

As set out in Propst v. Board of Educational Lands & Funds, 156 Neb. 226, 55 N. W. 2d 653: "The title to the state school lands was vested in the state upon an express trust for the support of common schools without right or power of the state to use, dispose of, or alien-

ate the lands or any part thereof except as allowed by the Enabling Act and the Constitution."

The majority opinion holds improvements on leased property create a property right. I have no quarrel with that holding if it is restricted to property rights in the removable improvements. However, I am in complete disagreement that land leveling, irrigation wells, and like improvements create a property right in other than those portions which conceivably can be removed, and to so hold would necessarily create a property interest in the land itself. This is beyond the power of the Legislature to grant, and is a direct violation of the school lands trust to the detriment of the common schools, the cestui que trust.

Over the years, the school land trust has been manipulated by the legislative process for the advantage of school land lessees, and to the detriment of the trust, by inadequate rental returns. The legislation under consideration, as construed by the majority opinion, is an extreme manipulation for the benefit of school land lessees, and is an obvious encroachment upon the trust itself.

The law applicable herein is well stated in State ex rel. Ebke v. Board of Educational Lands & Funds, 154 Neb. 244, 47 N. W. 2d 520: "A trustee acts in a representative capacity and persons dealing with him are bound to be cognizant of his powers. A trustee is required to dispose of trust property upon the most advantageous terms which it is possible for him to secure for the benefit of the cestui que trust whom he represents. The rule is no different in the leasing of property of a trust estate."

In that same case, we said: "The state in acting as a trustee is subject to the same standards, and when its status as a trustee is fixed by the Constitution a violation of its duty as a trustee is a violation of the Constitution itself. * * *

"That the Legislature has the power to provide the method of administering the public school lands of the

state as a trust is not subject to question. But the method provided must be one which is within the law governing the administration of trust estates. The designation of these lands as a trust in the Constitution has the effect of incorporating into the constitutional provision the rules of law regulating the administration of trusts and the conduct and duties of trustees. A breach of trust in such a situation is in effect a violation of the constitutional provision and has the effect of invalidating the legislation authorizing the breach."

It seems elementary to me that in dealing with this trust a strict interpretation must be placed upon all statutes, agreements, and proceedings for the protection of the beneficiaries of our public school lands. This fact, it appears to me, has been wholly ignored by the Banks case and the majority opinion herein. I have no quarrel with these holdings when interpreting rights between lessees. As I interpret the improvement statutes, they refer to *authorized* improvements, and contemplate, and I believe can only contemplate, the relationship between the old and the new lessees. The statute is so limited. To extend them, as was done by the Banks case and is done by the majority opinion herein, is to ignore the trust nature of the property, and to read into the statute a grant which is beyond the power of the Legislature to give. In the first instance, the State merely serves as an intermediary between the old and the new lessees. I cannot accept any interpretation that grants lessees any land benefits as against the trust, for the simple reason that the Legislature is without power to create or grant such benefits. What the majority opinion does is to diminish the value of the school lands by considering the State as a new lessee rather than as a trustee. To me this is not only judicial legislation but legislation in violation of a constitutional prohibition.

WHITE, C. J., and NEWTON, J., join in this dissent.