State of Nebraska, Board of Educational Lands and Funds, appellant, v. Fannie Haberman, appellee.
214 N. W. 2d 266

Filed January 18, 1974. No. 38925.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellant.

McGinley, Lane, Mueller, Shanahan & McQuillan and John A. Gale, for appellee.

Heard before White, C. J., Spencer, Boslaugh, Smith, McCown, Newton, and Clinton, JJ.

Per Curiam.

This is an action for a declaratory judgment to ascertain the relative rights of a tenant of school lands and the Board of Educational Lands and Funds in certain improvements placed on the land by the tenant. Judgment was entered for the defendant-tenant. We affirm.

Involved are buildings of various types, wells, fences, and land leveling. Several of the buildings, including a house and three metal grain bins, were on permanent-type concrete foundations. All the improvements were made prior to September 14, 1953, with the exception of one 4,300 bushel-capacity grain bin erected without plaintiff's approval or consent in 1964.

The law pertaining to pre-1953 improvements has vacillated in recent years. See, Banks v. State, 181 Neb. 106, 147 N. W. 2d 132; State v. Bardsley, 185 Neb. 629, 177 N. W. 2d 599; State v. Rosenberger, 187 Neb.

726, 193 N. W. 2d 769. The latter case discloses that a majority of the present membership of this court is of the opinion that tenants of school lands have a compensable interest in pre-1953 improvements, notwithstanding the unconstitutionality of the former statute. See Watkins v. Dodson, 159 Neb. 745, 68 N. W. 2d 508. No distinction is made between permanent and temporary-type structures. These cases appear to be determinative of rights in the pre-1953 improvements, exclusive of a tenant's personal property, and to vest a compensable interest in the tenant.

A somewhat different situation appears with reference to the grain bin erected after 1953. It is a fundamental rule of law that contracts, including leases, are to be construed according to laws in existence at the time the contracts are entered into. The lease here in question was entered into as of January 1, 1943, expired December 31, 1967, but was then extended from year to year. "Every contract is made with reference to, and subject to, existing law, and every law affecting the contract is read into it and becomes a part thereof. This is true between individuals dealing between themselves by contract, express or implied, and likewise true between individuals and the government. * * *

"The rights of a lessee of school land are determined by the law as it was at the time the lease was made and the lessee may not be deprived of any substantial right resulting from the lease in his favor by subsequent legislation." Pfeifer v. Ableidinger, 166 Neb. 464, 89 N. W. 2d 568. See, also, Stoller v. State, 171 Neb. 93, 105 N. W. 2d 852.

Section 72-240.07, R. R. S. 1943 (Laws 1953, c. 255, § 2, p. 863), provided that improvements placed on school lands without written approval by the Board of Educational Lands and Funds would be "considered improvements of the land and the lessee shall not be entitled to reimbursement therefor." This statute was

in effect when the grain bin was erected on a perma-
nent-type concrete foundation. Is it applicable?

Under the 1943 laws in effect at the time of the ex-
ecution of the lease, no such permission was required
or forfeiture provided for. Article I, section 16, Con-
stitution of Nebraska, forbids and makes ineffective any
"law impairing the obligation of contracts." A statute
may not operate retroactively where it would impair
the obligation of a contract or interfere with a vested
right. See Travelers Ins. Co. v. Ohler, 119 Neb. 121,
227 N. W. 449. As seen in the Stoller and Pfeifer cases,
*supra*, the rule serves to protect the vested rights of
tenants of school lands. Since the Legislature cannot
give away vested interests in school lands, it also serves
to protect the trust property held by the State. See
Lassen v. Arizona ex rel. Arizona Highway Dept., 385
U. S. 458, 87 S. Ct. 584, 17 L. Ed. 2d 515.

At the time the lease was executed, a tenant had the
right to place any improvements he desired upon school
lands without specific permission. Under our decisions
in Banks and Rosenberger, *supra*, the tenant had a com-
pensable interest in the improvements. The right thus
acquired was a substantial property right which cannot
be affected by the later 1953 statutory restriction. We
therefore conclude that defendant had a compensable in-
terest in the grain bin and the judgment of the District
Court is affirmed.

AFFIRMED.

Adopted by the court before January 1, 1974.

McCOWN, J., concurring in result only.

The statutes dealing with "improvements" on school
land leases over the years have had little or no regard
for the technical definitions and distinctions of the com-
mon law in marking the dividing line between real
estate and personal property. Neither have these stat-
utes generally made distinctions between "improve-
ments" which are severable from the land and those

which become an actual part of the land itself and could never be severed. Nevertheless, it is clear that these statutes did not and could not apply to personal property which was neither a part of nor affixed to the real estate.

Certain types or kinds of property may be either personal property or real property depending on the facts. A grain bin falls in this category. The District Court found that the grain bin here was personal property owned by the lessee. That factual finding will not be disturbed in this court where there is reasonable evidence to support it. The judgment of the District Court was correct in all respects, and should have been affirmed on the basis upon which it was made.

CLINTON, J., joins in this concurrence.

SPENCER, J., dissenting.

I respectfully dissent from the decision of the court in this case. As I said in my dissent in State v. Rosenberger (1972), 187 Neb. 726, 193 N. W. 2d 769, I cannot be a party to the rape of the school land trust. For the reasons I enunciated there, I believe that improvements made on school lands prior to September 14, 1953, without the specific consent of the Board of Educational Lands and Funds, became the property of the State. I question the power of the Legislature or of this court to force the Board of Educational Lands and Funds to grant rights to the detriment of the beneficiaries of the school land trust. See Lassen v. Arizona ex rel. Arizona Highway Dept. (1967), 385 U. S. 458, 87 S. Ct. 584, 17 L. Ed. 2d 515.

I believe the majority in Rosenberger were in grievous error in overruling State v. Bardsley (1970), 185 Neb. 629, 177 N. W. 2d 599, and readopting Banks v. State (1966), 181 Neb. 106, 147 N. W. 2d 132. In Bardsley the court had before it facts identical to those concerning the 4,300-bushel grain bin. Both cases involved 25-year leases of school land entered into in the early

1940s and expiring in the late 1960s. In both cases, the lessees placed buildings on the school land after September 14, 1953, without the express written permission of the Board of Educational Lands and Funds. Because I believe Bardsley states the proper rule, the lower court was in error in holding that the lessee is entitled to the proceeds of the sale of the grain bin. When the grain bin was placed on the land without the approval of the Board of Educational Lands and Funds, it became at that time the property of the state.