CARLETON PETTIJOHN, JR., APPELLEE AND CROSS-APPELLANT, V. STATE OF NEBRASKA, BOARD OF EDUCATIONAL LANDS AND FUNDS, APPELLANT AND CROSS-APPELLEE.

281 N. W. 2d 901

Filed August 7, 1979. No. 41977.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellant.

Forrest F. Peetz of Magnuson, Magnuson & Peetz, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

Defendant, State of Nebraska Board of Educational Lands and Funds (Board), appeals from a jury verdict in the District Court for Brown County, Nebraska, determining $14,700 as the value of permitted improvements owned by lessee-plaintiff, Carleton Pettijohn, Jr., as located on leased school lands being sold by the Board. Defendant claims as error: (1) The admission of evidence of a value of improvements other than the contributory value of

the improvements to the land; (2) refusal, as evidence of impeachment, of plaintiff's personal property tax schedule; (3) refusal of defendant's tendered instructions; and (4) awarding attorney's fees and appraiser fees. Plaintiff cross-appeals claiming the court erred in striking certain improvements as not compensable.

Plaintiff is the county assessor of Brown County, Nebraska, and holder of a school land lease of 76.90 acres of pastureland adjacent to a railroad right-of-way near Long Pine, Brown County, Nebraska.

The annual rental is $112.80. Some of the improvements were built as a stockyard loading facility prior to 1934 when plaintiff's father purchased them for an unknown consideration; he died in 1958. In 1964, plaintiff and his mother became the lessees as joint tenants under the present lease, expiring December 31, 1975; she died in 1968. There is evidence of overbuilding and improvement for the special use and benefit of the plaintiff in that he uses the land as improved as headquarters for his cattle ranching operation, which includes 1,850 acres of adjoining pastureland that he owns and other leased land.

This proceeding has origin in sections 72-240.07 to 72-240.24, inclusive, R. R. S. 1943. Pursuant to section 72-240.11, R. R. S. 1943, the Board prepared a list of permitted improvements as agreed by the parties, including a house, garage, bunkhouse, barn, stock well, jet pump, automatic waterer, U. G. Pipe, fencing - 400 rods, corrals, pipe gates, and chute. The parties were unable to agree as to values and defendant applied to the county court to determine their value. § 72-240.13, R. R. S. 1943. The appraisers found the improvements had a value of $17,250. Defendant appealed to the District Court where the jury returned a $15,700 verdict on December 3, 1977, assigning separate values for each improvement. At the beginning of the trial, defendant

moved to strike the stock well, jet pump, automatic waterer, and U. G. pipe as being nonpermitted improvements; the motion was granted after the jury verdict; and the jury verdict was reduced by $1,000, which was the assigned value for those four improvements. The trial court awarded plaintiff attorney's fees of $2,750 and $150 each for two appraisers.

The origin, history, and development of the law in school land cases has been reviewed many times. See State ex rel. Ebke v. Board of Educational Lands and Funds, 154 Neb. 244, 47 N. W. 2d 520 (1951); Banks v. State, 181 Neb. 106, 147 N. W. 2d 132 (1966); State v. Rosenberger, 187 Neb. 726, 193 N. W. 2d 769 (1972).

Structural improvements erected by a lessee on school lands (now permitted improvements) are the property of the lessee with the right of removal. § 72-240.07, R. R. S. 1943. Prior to 1965, at the termination of the lease, the lessee had the option to remove the improvements or sell them to the new lessee. In 1965, section 72-257, R. R. S. 1943, gave authority to the Board to sell school lands. The lessee now has the right to either remove or to sell the improvements to the buyer of the land. In the latter event, the lessee's interest is described as a compensable interest to be determined by statutory procedures as it has value to the land. See Banks v. State, *supra*.

The main question here is the proper measure of lessee's compensable interest in permitted improvements. Plaintiff contends section 72-240.18 (1), R. R. S. 1943, as given by the court in instruction No. 3, set out below, properly states the rule. We think this contention is met by Friehe v. State, 199 Neb. 504, 259 N. W. 2d 925 (1977), interpreting section 72-240.18 (2), R. R. S. 1943, in which we held that cost was only one factor in determining the value of crops and that the appraisers should consider all factors which would normally enter into the determination of

value. Defendant contends that cost means the lessee's actual cost, claiming as authority State v. Rosenberger, *supra*.

"The public school lands of the state are trust property and the state is required to administer them as such for the benefit of the common schools of the state. * * * The power to lease the public school lands of the state rests with the Board of Educational Lands and Funds in the manner provided by the Legislature. * * * A trustee acts in a representative capacity and persons dealing with him are bound to be cognizant of his powers. * * *." State ex rel. Ebke v. Board of Educational Lands and Funds, *supra*.

As will be noted later, parts of the concurring opinion of Carter, J., in Banks bear special attention: "The interest of the lessee is therefore a limited title or, what would probably be more accurate, a compensable interest in the improvements on the leased lands. * * * The Legislature is authorized to provide by statute the terms upon which the public school lands of the state may be sold, but such terms must be consonant with the duties and functions of a trustee acting in a fiduciary capacity. It is the duty and function of a trustee to avoid unnecessary risks of loss and at the same time to obtain a maximum return to the trust estate consistent with the avoidance of such risks. * * * The more important issue is the determination of the compensable interest of the lessee and the type of evidence required to support a judgment.

"I am of the opinion that the cost of the improvements to the occupying lessee is generally of little evidentiary value, although it may constitute a maximum that may be recovered. The determination of the value of improvements on a cost basis overlooks depreciation, obsolescence, overimprovement, and a possible want of benefit to the land. Some of the improvements listed by the statute may be paid for in

whole or in part by the government as a matter of public policy, and should not accrue to the benefit of the occupying lessee. Certainly any value added to the land itself, as distinguished from the actual value of the improvements, is the property of the trustee. The compensable interest of the lessee should not be permitted to exceed the value of the improvements to the land at the time of the termination of the occupying tenant's lease. Compensation for improvements must be consistent with the overall purpose, spirit, and public policy involved. Any judgment which in effect invades the trust res cannot be sustained.''

L. B. 704 (1967) was the Legislature's direct response to State v. Banks, *supra*, amending applicable statutes to provide guidelines for the Board and the lessees of school lands to arrive at the value of the lessee's compensable interest in their improvements on the school land which throughout the statute is described as "the value to the land of permitted improvements and growing crops * * *.'' § 72-240.10, R. R. S. 1943. The legislative history refers to Judge Carter's concurring opinion, and shows an effort was made by that body to meet the Banks' decision and the request of the Board of Educational Lands and Funds for procedural guidelines. Senator Ramey Whitney, cointroducer of the bill, said: "The purpose of LB 704 is to set up guidelines for the appraisal of the improvements on state school lands when the land is sold or leased. The appraisal methods are in accord with the recent decisions of the Nebraska Supreme Court, which will protect the value of the trust. * * * The appraised values are intended not to exceed the value which the improvements add to the value of the land. * * * But in determining value of all improvements, including growing crops, *the appraisers may consider any evidence given them as to value in determining the actual value of improvements*. However, the actual

value of improvements shall be determined by considering the improvements in question as a part of the school land unit and not as if severed from the realty." (Emphasis supplied.)

"Where an occupying claimant is allowed [to recover] for valuable and lasting improvements made while in possession, the measure of his recovery is the amount the real estate increased in value by reason of such improvements, and not the cost of making the same. * * * The report before us plainly indicates that the appraisers were attempting to fix the actual cost of the improvements placed on the land, and this, standing alone, is not sufficient evidence on which to make a finding as to the enhancement of the value of the land by reason of the improvements." Gombert v. Lyon, 72 Neb. 319, 100 N. W. 414. See, also, Attebery v. Prentice, 158 Neb. 795, 65 N. W. 2d 138.

"As a general rule, the cost of an improvement is a proper factor for consideration in determining its value to the property. But ordinarily a finding of value cannot be sustained on evidence of cost alone." 41 Am. Jur. 2d, Improvements, § 30, p. 500; 24 A. L. R. 2d 11, at p. 37.

Since many of the improvements in this case were old and there was no available proof of cost either by lessee or other source, both parties used the reproduction cost less depreciation method of establishing value. Plaintiff's experts used that amount as the market value of the improvement which they then testified as being its value to the land. Defendant did not object. But the market value of an improvement standing alone is not its value to the land.

The court gave instruction No. 3: "The jury shall determine the value to the land of the permitted improvement, to-wit: 1. House. 2. Garage. 3. Bunk house. 4. Barn. 5. Stock well. 6. Jet pump. 7. Automatic waterer. 8. U. G. pipe. 9. Fence - 400 rods. 10. Corrals. 11. Pipe gates. 12. Chute,

as of the date of expiration of the lease on the land, namely, on December 31, 1975.

"In determining the value of said permitted improvement, the jury shall consider the cost of the permitted improvements less any depreciation, obsolescence and any want of benefit to the land, and fix an amount in money of such value."

At the instruction conference, defendant tendered the following instruction which was refused: "You are instructed that in determining the value of plaintiff's improvements to the 76.90 acres of defendant's land you should consider the fair market value of the land on December 31, 1975, as if the improvements were not on the land. The fair market value of the 76.90 acres with the improvements should then be determined as of the same date. The value which you may return is limited to the value of the improvements so determined, or the actual cost of the improvements furnished and paid for by the plaintiff, whichever is less." This tendered instruction is taken directly from State v. Rosenberger, *supra*.

The first paragraph of instruction No. 3 as given by the court is a general statement of the law as to the measure of plaintiff's compensable interest in the improvements. While the second paragraph of that instruction is taken directly from section 72-240.18 (1), R. R. S. 1943, we believe it could mislead the jury into making cost of the improvement the determinative factor.

The last sentence in defendant's tendered instruction suggests that the value of the improvement might be limited to: "* * * the actual cost of the improvement furnished and paid for by the tenant." Such a limitation could work a hardship on the lessee by limiting proof or even preventing proof of value in many instances because of long lapse of time, lost and destroyed records, and unavailable witnesses. The Board now includes in its application form the lessee's estimate of cost. This proce-

dure improves credibility; however, that alone cannot determine the value to the land of the improvement.

The value to the land means that amount of money that the improvement enhances, contributes, increases, or adds to the value of the land. In arriving at the value to the land of an improvement, consideration should be given to its functional use, location on the land, utility, obsolescence, overbuilding or want of use, state of repair, cost to the lessee less depreciation, adaptability, and all other facts and circumstances shown by the evidence that are not speculative that relate to any purpose for which the improvement is reasonably useful to the unimproved land at the time of the determination, or which will become so useful in the near future. Consideration should not be given to the usefulness of that improvement either (1) with other land; or (2) for a special use or purpose other than as it may be naturally and reasonably adapted to the land; or (3) with other disputed and undisputed improvements on the land and those the lessee intends to remove. In other words, the measure of value here is unlike the unit rule in eminent domain proceedings and concerns the separate value to the land of each disputed permitted improvement.

Section 72-240.17, R. R. S. 1943, requires the appraisers to make a valuation for each improvement, and the trial court here so provided for the jury to do the same in instruction No. 3. This was proper where there was more than one disputed improvement since the statutory procedure is to determine the value to the land of each improvement that is disputed. The procedure does not change the right of the lessee to remove the improvement during the term of the lease; however, we do not reach the issue of any limitation of that right in terms of time. The statutes encourage the Board and the lessee to agree and compromise on values during the pro-

ceedings, and section 72-240.22, R. R. S. 1943, provides: "The permitted improvements * * * shall be deemed to be separate permitted improvements and if the board and the lessee agree as to the value of some permitted improvements but disagree as to the value of others, only those on which they do not agree need be appraised * * *."

The measure of lessee's compensable interest in the improvements should be determined as follows: First, determine the fair market value of the school land with only the improvements whose values are disputed. Then, determine the fair market value of the school land without any improvements owned by the lessee. The difference (remainder) between these two values is the value to the land of the lessee's compensable interest in the disputed improvements. Insofar as this rule is contrary to State v. Rosenberger, *supra*, that case is overruled.

Where there is more than one disputed permitted improvement, the jury should assign a separate value to the land for each improvement and caution be given that the aggregate of those values must not total more than the value to the land determined by the foregoing general measure of compensatory interest.

On direct examination, plaintiff was allowed to testify, over defendant's objection, as to the value of the 12 separate improvements without the qualification of their value to the land, which is fundamental to this issue. The objection should have been sustained.

During defendant's cross-examination of plaintiff, a copy of his 1976 personal property tax schedule was offered for impeachment purposes as it included the item "Improvements on school lands, $3,685.00." Plaintiff's objection was sustained. Before ruling, the court was informed that the lessee was required to file such a return, section 77-1209, R. R. S. 1943, and the value included on the form was

the same figure as used in the county assessor's records as prepared by a commercial appraisal company. The evidence was relevant and should have been admitted.

Defendant objects to the court allowing plaintiff's attorney a fee of $2,750 and a fee of $150 for each of plaintiff's two expert witnesses, claiming that such allowances are contrary to State ex rel. Ebke v. Board of Educational Lands and Funds, 159 Neb. 79, 65 N. W. 2d 392 (1954): "It is the practice in this state to allow the recovery of attorney's fees and expenses only in such cases as are provided for by statute, or where the uniform course of procedure has been to allow such recovery." The answer is that there is statutory authority in section 72-240.19 (1), R. R. S. 1943.

Some history is helpful. Prior to 1963, section 72-240.06, R. R. S. 1943, related to the appeal procedure in controversies between old and new lessees which was adversary in nature providing for appeal in the same manner as in eminent domain cases under sections 76-716 to 76-720, R. R. S. 1943. At that time section 76-720, R. R. S. 1943, only related to the question of which party was to pay the court costs. In 1963, section 76-720, R. R. S. 1943, was amended, granting the court discretion to allow attorney's fees and appraiser fees. In 1967, section 72-240.06, R. R. S. 1943, was repealed and now appears as section 72-240.19, R. R. S. 1943: "(1) Appeals from the valuation set by the board of appraisers may be made by either party *in the same manner as appeals from the award of a board of appraisers in condemnation proceedings as governed* by sections 76-715 to 76-721. Those provisions shall apply as if the board is the condemner and the lessee is the condemnee." (Emphasis supplied.)

The question is whether by the adoption of section 72-240.19, R. R. S. 1943, the Legislature intended to adopt the provisions of section 76-720, R. R. S. 1943,

relating to allowance of attorney's fees and appraiser fees. We have uniformly held that attorney's fees will not be allowed except where specifically authorized by statute or by uniform course of procedure. State ex rel. Ebke v. Board of Educational Lands and Funds, *supra*.

In reviewing the legislative history, the subject of attorney's fees was not discussed before the Education Committee but the subject of appraiser fees was discussed by Senator Ramey Whitney, one of the proponents of the bill. Senator Whitney: ''* * * Because you see you can't charge the state for the cost of the appraisal of the improvements because the improvements do not belong to the state. You would hurt the fund if you did. Therefore, you have to charge the cost of the appraisal up to the person who owns the improvements, namely, the lessee.''

It is obvious that the Legislature did not intend to charge the State with appraiser fees. The same reasoning applies to attorney's fees. There has been no statute authorizing the allowance. The trial court was without authority to require the State to pay either attorney's fees or appraiser fees.

Whether a statute which would allow such fees would pass constitutional muster is not before us, and is not decided.

On cross-appeal plaintiff claimed error by the court striking four improvements, a stock well, jet pump, automatic waterer, and U. G. pipe, claiming that they were included in the original list of improvements confirmed by the agreement of the parties more than 2 years before trial. The evidence was that in June 1967 plaintiff by letter and application requested authority from defendant to improve the land by drilling a new well and installing a pump, casing, underground pipes, and septic tank at the estimated cost of $744.38, and that this application was approved by defendant ''with the understanding that the cost [of the well, casing, and un-

derground pipe] be depreciated over the balance of the term of the present lease and that the pressure pump and other items of equipment are to be considered personal property of the lessee, noncompensable and subject to removal upon expiration or termination of the present lease." Defendant's original inclusion of these items in the list of permitted improvements is not explained. The preparation of the statutory list is a ministerial act of the Board. It would be contrary to public policy to deny the Board the right to amend the list to reflect the facts and the status of each improvement. Both parties are now returned to their original position of either agreeing on the list or to a determination by declaratory judgment.

Plaintiff also claims that the Board's conditional approval of plaintiff's 1967 application for a watering system as "noncompensable" is unlawful for the reason that under section 72-240.07, R. R. S. 1943, the Board only has authority to identify an improvement as either "permitted" or "nonpermitted" and there is no authority to give permission for an improvement on a conditional basis. In addition to its statutory powers and duties, the Board, as trustee, has inherent powers to supervise and manage the school lands which include those special conditions and limitations here which we deem reasonable and necessary.

For the reasons stated, this cause is remanded for a new trial.

REVERSED AND REMANDED FOR
A NEW TRIAL.

BOSLAUGH, J., concurs in the result.

KRIVOSHA, C. J., concurring in part, and dissenting in part.

In the most part, I wholeheartedly join with the court in the adoption of their opinion in this case. I believe that the rules with regard to the measure of lessee's compensable interests in the improvements

should be determined exactly as set out in the majority opinion, and enthusiastically concur in overruling State v. Rosenberger, 187 Neb. 726, 193 N. W. 2d 769.

I find fault, however, with the last paragraph of the majority opinion, insofar as it seems to imply that notwithstanding the provisions of section 72-240.07, R. R. S. 1943, the Board has inherent powers which include the right to impose special conditions and limitations on lessee's improvements and thereby deny lessee the right to receive compensation for such improvements. I do not believe that any such authority does exist, and that section 72-240.07, R. R. S. 1943, specifically compels a contrary conclusion.

Section 72-240.07, R. R. S. 1943, clearly and unequivocally provides as follows: "*Before* any buildings, wells, irrigation improvements, dams, or drainage ditches are placed upon school lands by a lessee, written *approval must* be obtained from the Board of Educational Lands and Funds, * * * and such improvements where approval is secured *shall* be called 'permitted improvements' and belong to the lessee and the lessee has the right to be paid a sum of money equal to the value which the improvements add to the value of the land by the buyer of the land or the new lessee in accordance with procedures as given in sections 72-240.11 to 72-240.24 and 72-258." (Emphasis supplied.)

It occurs to me that the statute in this regard is absolute and clear. No improvement may be placed upon the school lands unless and until written approval is obtained. Once that written approval is obtained, the improvement "shall be called" a permitted improvement and the lessee is entitled to receive compensation. Nowhere in the act does it indicate that the trustee has authority to grant approval for an improvement and call it a "nonpermitted improvement."

There is no dispute that the parties can *agree* that

the permitted improvement shall have no value for which the lessee shall later be paid. That is not the same, however, as implying, as I believe the majority has, that the Board has inherent powers to grant approval of an improvement and still call it a "nonpermitted improvement" for which compensation may not be sought. I would have decided that matter contrary to the majority. In all other respects, however, I would wholeheartedly concur and join with the majority.

McCown, J., concurring in part, and dissenting in part.

I dissent for the reasons more fully set out in my dissent in Kelly v. State, *post* p. 286, 281 N. W. 2d 909.

Where a tenant of state school lands acquires a compensable interest in an "improvement" to the extent of the reasonable value of labor, supplies, and money expended or contributed by him for a permitted "improvement" to the land, or its cost if purchased from a former tenant, and he has had the exclusive use and benefit of the lands and the "improvement" for the term of his lease, to permit him to have a greater compensable interest at the termination of his lease than he had to begin with is clearly a violation of the basic principles of trust law. The holding in State v. Rosenberger, 187 Neb. 726, 193 N. W. 2d 769, prevents such a violation and should be followed. To the extent that the majority opinion here overrules State v. Rosenberger, *supra*, it violates the terms of the state school land trust set out in the Enabling Act and the Constitution of Nebraska.

Clinton, J., joins in this concurrence and dissent.