FLOYD KELLY ET AL., APPELLEES, V. STATE OF
NEBRASKA, BOARD OF EDUCATIONAL LANDS AND
FUNDS, APPELLANT.

281 N. W. 2d 909

Filed August 7, 1979. No. 41925.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellant.

Edward E. Hannon of Cronin & Hannon, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

This is an appeal by the State of Nebraska Board of Educational Lands and Funds, defendant, from a jury verdict in the District Court for Boyd County, Nebraska, awarding $2,900 to Floyd Kelly and Rose Kelly, plaintiffs, as compensation for improvements to school lands being sold by the Board.

Plaintiffs are the lessees of 80 acres of school land in Boyd County, Nebraska, expiring December 31, 1976. Lessees improved the land by a 300-foot earthen dam constructed by them in 1953 or 1954 and installation of 320 rods of fencing. The parties could not agree on the value of the improvements; plaintiffs filed their petition for an appointment of appraisers in the county court. The parties apparently reached an agreement concerning the 320 rods of fence. The appraisers awarded plaintiffs $2,500 for the dam. On appeal to the District Court the jury verdict was $2,900. Defendant appeals assigning as error: (1) The court's refusal to give defendant's tendered instruction on the measure of plaintiffs' interest; (2) excluding evidence of the United States

government's partial payment of the original dam-site construction costs; and (3) awarding attorney's fees and appraiser fees.

Plaintiffs' expert witness testified that the fair and reasonable value of the dam was $2,700 using reproduction cost less depreciation as the basis for his opinion.

Floyd Kelly testified concerning the construction, maintenance, usefulness, condition, and present cost of materials used in constructing a similar dam. He testified the original cost of the dam, not including his labor, was $1,200. He stated the dam had a value to the land of $4,000. There was no objection to this testimony. On cross-examination an attempt was made to elicit information that the federal government contributed money toward the original cost. Plaintiffs' objection was sustained. This was relevant and proper cross-examination; it was not error, however, since that evidence was later included in the record as a part of an exhibit showing the United States Department of Agriculture contributed $212.50 toward the cost.

Our decision in Pettijohn v. State, *ante* p. 271, 281 N. W. 2d 901, announced today, controls our decision in this case. Here, both instruction No. 3, given by the court, and defendant's tendered instruction addressed the issue of the measure of lessee's compensable interest, and were the same as in Pettijohn. The issue of the allowance of attorney's fees and appraiser fees is also the same. The court's instruction No. 3 was in error in that it did not state the proper measure of plaintiffs' compensatory interest.

REVERSED AND REMANDED FOR A
NEW TRIAL.

McCown, J., concurring in part, and dissenting in part.

The legislative definitions of "improvements" on school lands have had little regard for the technical

niceties of the common law or its definitions. The Legislature has made no distinctions between "crops," for example, and "land leveling," nor between "improvements" which are severable from the land and those which become or are an actual part of the land itself and could never be severed. Obviously, the Legislature has treated "improvements" in a wide-ranging variety of contexts. Black's Law Dictionary (5th Ed., 1979) defines "improvement" as: "A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure or other development, * * *."

At least since Banks v. State, 181 Neb. 106, 147 N. W. 2d 132, this court has consistently held, and the Legislature has now provided, that the lessee of school lands has a "compensable interest" in permitted "improvements" to school lands which cannot exceed the value of the "improvements" to the land at the time of the termination of the lease. That limitation is required by the fact that title to the state school lands is vested in the state under an express trust for the support of common schools, and the state, in dealing with the school lands, is subject to the same standards as any other trustee and has no right or power to dispose of or alienate the school lands or any part thereof except as allowed by the Enabling Act and the Constitution. See, Propst v. Board of Educational Lands and Funds, 156 Neb. 226, 55 N. W. 2d 653; State ex rel. Ebke v. Board of Educational Lands and Funds, 154 Neb. 244, 47 N. W. 2d 520.

Following the Banks case, the Legislature enacted the statutes involved here, and established the procedures for determining the compensable interest of

a lessee in "improvements" at the time of the termination of the tenant's lease.

To permit a tenant to have a compensable interest in the school lands in excess of the value of the "improvements" to the land at the time of the termination of the tenant's lease would be a direct violation of the fiduciary duty of the trustee, no matter how much more than that had been originally invested by the tenant in the "improvement." The courts and the Legislature have accepted that fact.

It is an even more obvious violation of fiduciary duty to permit a tenant to acquire a compensable interest in the land in excess of the total cost of labor and capital invested in or contributed to the "improvements" by the tenant at the time the "improvements" were originally placed on the land.

The concurring opinion in Banks, which is extensively quoted in the majority opinion in Pettijohn v. State, *ante* p. 271, 281 N. W. 2d 901, reflected the traditional assumption that the value of "improvements" to the school lands at the time of termination of the lease would be less than the original cost of the "improvements." Obviously that assumption is not always valid. The Banks opinion acknowledged that fact and said that while the cost of "improvements" to the lessee was generally of little evidentiary value, "it may constitute a maximum that may be recovered." The concurring opinion also said: "Certainly any value added to the land itself, as distinguished from the actual value of the improvements, is the property of the trustee."

Reflecting the double limitations on the compensable interest of the tenant in the "improvements," State v. Rosenberger, 187 Neb. 726, 193 N. W. 2d 769, adopted the rule that the compensable interest of the tenant in "improvements" "is limited to the value of the 'improvements' " to the land at the time of the termination of the lease "or the actual cost of the 'improvements' furnished and

paid for by the tenant, whichever is less."

Technically speaking, the "compensable interest" of a tenant in permitted "improvements" to school lands is actually a limited right to reimbursement for the reasonable value of labor, materials, and capital (the cost), invested or contributed by the tenant in the "improvement" at the time it is placed on the land, not to exceed the value of the "improvement" to the land at the time of the termination of the lease.

The case now before us vividly illustrates the effect of modifying or partially overruling Rosenberger. The evidence in this case established that the tenants improved the school land by constructing an earthen dam out of the land itself in 1953 or 1954. The total cost of the earthen dam at the time it was originally constructed was $1,200, but the United States Department of Agriculture contributed $212.50 of that amount so that the tenants' total investment in the "improvement" was $987.50. The appraisers determined that the compensable interest of the tenants at the time of termination of the lease was $2,500, and the jury in the District Court determined that it was $2,900. The dam was always a part of the land itself, could never be severed from the land, and any appreciation in value was an appreciation in the value of the land itself. The tenants had the use and benefit of the dam and the land for over 25 years and, now that the land is being sold, the tenants will receive more than three times their total investment in the school lands, while the beneficiaries of the school land trust will have been deprived of a substantial interest in the school lands.

The only exception this court has previously made to the double limitation rule of Rosenberger is in the case of Friehe v. State, 199 Neb. 504, 259 N. W. 2d 925, in which we held that a tenant was not limited to the original cost of putting in a crop and fertilizing it. Under school land leases and by statute (§ 72-

240.13, R. R. S. 1943), crops are the property of tenants and the tenant is and should be entitled to any appreciation over the cost of planting and fertilizing the crop. Crops are only "improvements" in the sense that they have been included in the improvement sections of the statutes dealing with school land leases. The fact that a tenant is entitled to any appreciation in the value of growing crops does not mean that he is entitled to all the appreciation in the value of the school land resulting after an "improvement" has been added to the land.

The two-pronged limitation of State v. Rosenberger, *supra*, appropriately protects the interests of the beneficiaries of the school land trust. I find no reasonable justification in trust law or otherwise for allowing a tenant to recover the full present value of an "improvement" to school land without even establishing what he paid for or contributed to produce that value. Neither do I find any justification in trust law or otherwise for holding that a tenant has any right to reimbursement without proving what value he advanced. In any case, it is clear that a tenant of school lands cannot acquire an interest in the school land itself as distinguished from an interest in the "improvements."

Where a tenant of state school lands acquires a compensable interest in an "improvement" to the extent of the reasonable value of labor, supplies, and money expended or contributed by him for a permitted "improvement" to the land, or its cost if purchased from a former tenant, and he has had the exclusive use and benefit of the lands and the "improvement" for the term of his lease, to permit him to have a greater compensable interest at the termination of his lease than he had to begin with is clearly a violation of the basic principles of trust law. The holding in State v. Rosenberger, 187 Neb. 726, 193 N. W. 2d 769, prevents such a violation and should be followed. To the extent that the majority

opinion here overrules State v. Rosenberger, *supra*, it violates the terms of the state school land trust set out in the Enabling Act and the Constitution of Nebraska.

CLINTON, J., joins in this concurrence and dissent.